IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2026 NOV 13 P 12: 12
CLERK
SO. DIST. OF GA.

SAVANNAH DIVISION

JASON MOORE,

Plaintiff,

CASE NO.: 4:26-cv-00336

v.

JURY TRIAL DEMANDED

HYUNDAI MOTOR GROUP METAPLANT AMERICA, LLC (HMGMA),

Defendant.

---

COMPLAINT FOR EMPLOYMENT DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION

The Plaintiff, Jason Moore, representing himself *pro se*, brings this civil action against the Defendant for intentional violations of Title I of the Americans with Disabilities Act of 1990 (ADA), as amended by the ADA Amendments Act of 2008 (ADAA), 42 U.S.C. §§ 12101 et seq., and the anti-retaliation and coercion provisions of Section 503(b) of the ADA, 42 U.S.C. § 12203, showing the Court as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12117(a), and 42 U.S.C. § 12203(c).

2. Venue is proper in the Southern District of Georgia, Savannah Division, pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices, discriminatory acts, statutory administrative defaults, and bad-faith facility blockades occurred at the HMGMA facility located at 1500 Genesis Drive, Ellabell, Georgia 31308, which sits within this judicial district.

## II. FACTUAL ALLEGATIONS

3. Plaintiff Jason Moore was hired by Defendant HMGMA on April 27, 2026. This employment was strictly contingent upon a mandatory pre-employment physical examination completed at St. Joseph's Urgent Care Center (101 Saint Joseph/Candler Drive, Suite 100, Pooler, GA) on March 31, 2026. This medical screening made Defendant HMGMA 100% aware of Plaintiff's documented vision disability prior to his official April 27, 2026 hire date.

4. During his first week of training at the Quick Start Training Facility, Plaintiff verbally disclosed his visual impairment to multiple layers of HMGMA management, including the HR Manager, Floor Department Manager, and Talent Solutions Managers. While floor department personnel assured Plaintiff he would be supported, however, **HR Benefits Manager Brandi Petersen** hesitated regarding the implementation of any permanent workplace accommodations, initiating a continuous campaign of systematic disability discrimination and instructing lower-level HR Specialists (Specifically, **Dobie Morales Luna**) to implement severe administrative obstacles and ADA violations.

5. During this four-week training phase, the Quick Start Facility utilized a single biometric timeclock for approximately 200 trainees, establishing a physical bottleneck that forced Plaintiff

to clock in at 7:31 a.m. (one minute past the 7:30 a.m. shift start) on two occasions. Talent Solutions Manager **Tequila G.** explicitly instructed Plaintiff's class that these system log errors would be corrected internally. In direct contradiction, Plaintiff was punitively docked two hours of his contractually accrued Emergency Paid Time Off (EPTO) benefit. Plaintiff communicated this logging error to Defendant **Brandi Petersen** over the phone and via a formal email on June 11, 2026 **(Exhibit A).** Defendant Petersen ignored the email entirely and intentionally refused to correct the fraudulent record.

6. Upon transitioning to the active production floor on May 26, 2026, under **Group Leader Josh Trice**, Plaintiff was assigned to the **"Final OK"** department of the assembly line. On May 29, 2026, upon learning of Plaintiff's visual disability, Group Leader Trice pulled Plaintiff from the line and demanded he report to the onsite medical clinic. Onsite representative **Angela Douglas** stated she was unable to treat the condition and automatically placed Plaintiff on a company-requested, "**unrestricted leave of absence**," (no badge lockouts, on-site restrictions, or strict timelines) stating he could not return until he received an accommodation form from his physician. Because Plaintiff operated on first shift at that time and was continuously paired with a partner, no formal physical alterations were required. Plaintiff was medically cleared and returned to work on June 8, 2026 **(Exhibit B),** continuing to perform his essential functions flawlessly.

7. On August 3, 2026, HMGMA implemented a mandatory shift rotation, moving Plaintiff from first shift to second shift (night shift). The facility operated in an unprepared, disorganized, and severely understaffed manner, leaving floor personnel vulnerable to excessive physical over-exertion and immediate safety hazards. Knowing Plaintiff was visually impaired and at an operational disadvantage on a night shift schedule with dark spots, and having no depth

perception in one of his eyes on an assembly line, Defendant Trice deliberately removed the right-side line operator from Section 4L of the Final OK line, forcing a single disabled worker to absorb an engineering velocity designed for a two-person split-takt configuration.

8. When Plaintiff complained regarding this physical hazard and ongoing duress, Defendant Trice directed profanity toward the Plaintiff, stating: "I am tired of you, and you should have never been able to enter the building due to your disability." Defendant Trice explicitly stated he would refuse to accommodate Plaintiff because nothing was in writing. Defendant Trice then directed **Team Lead Frost** to refuse to assist Plaintiff if he fell behind on the assembly line and strictly prohibited floor personnel from pairing with Plaintiff for support, attempting to intentionally overwork a disabled worker to engineer a constructive discharge.

9. Defendant Trice further manufactured an unwritten floor policy overriding the corporate employee handbook **(Exhibit C)**, telling Plaintiff he would be denied the right to leave early for an emergency situation because meeting line production metrics for Trice's personal recognition took precedence over a disabled worker's welfare. To build a fraudulent defense for termination, Defendant Trice manipulated the electronic attendance logging system. Prior to calling out on August 21, 2026, and August 22, 2026, Plaintiff messaged Defendant Trice via text **(Exhibit D)** to verify that using his remaining four hours of EPTO for an early departure, under the official corporate attendance policy **(Exhibit E)**, would generate only a 1.5 occurrence and a discussion planner. Defendant Trice explicitly confirmed twice via text message that it would generate a 1.5 occurrence. However, upon Plaintiff's return on August 24, 2026, Defendant Trice showed Plaintiff his desktop terminal, where he had willfully overridden the accrued EPTO to fraudulently generate a 2.0 occurrence and an automatic Phase 1 corrective action **(Exhibit F)**.

This point manipulation directly prompted Plaintiff to file a formal **U.S. Department of Labor Wage & Hour Division Complaint on September 9, 2026, generating Case ID: 5114198.**

10. During his initial call-out on August 21, 2026, Plaintiff met in person with Defendant **HR Manager Brandi Petersen** and **HR Specialist Dobie Morales Luna,** notifying them of the severe floor hazards created by Defendant Trice and his explicit refusal to accommodate Plaintiff's vision disability. Plaintiff requested an administrative leave similar to the one implemented by the company on May 29, 2026 to obtain an updated medical accommodation suited for the night shift's environmental constraints and Defendant **Luna** denied the request, ordered Plaintiff back onto the dangerous production line, and issued an accommodation sheet with a strict 15-day deadline **(Exhibit G).**

11. On August 31, 2026, at 6:44 a.m., after nearly suffering a physical injury on the line due to unaccommodated line velocity, Plaintiff logged a formal EEOC Inquiry **(Exhibit H).** At 7:21 a.m., Plaintiff submitted a formal electronic OSHA Hazard Complaint **(Exhibit I).** At 1:02 p.m., Plaintiff sent a formal email notifying HMGMA management of his protected federal filings **(Exhibit J).** At 1:30 p.m., Plaintiff met with the HR office in person to confirm their receipt of the notice. Realizing that live EEOC and OSHA complaints were active on the federal servers, Defendant **Petersen** tried to show compliance in the interactive process by approving an unpaid 30-day leave of absence to obtain a formal accommodation **(Exhibit K),** failing to engage in the interactive process before the filings when it was requested back on August 21, 2026.

12. To simulate a fake statutory compliance during this August 31st meeting, Defendant **Luna** informed Plaintiff he would immediately provide the Essential Job Functions **(EJFs)(Exhibit Y)** template to present to his physician by the end of the week Friday, September 4, 2026. In reality,

Defendant Luna intentionally withheld the September 2, 2026-created EJFs for 16 consecutive days, subsequently fabricating an email on September 18, 2026, falsely claiming he was "re-sending" documents he had never sent to begin with trying to hide his suppression and interference in the interactive process **(Exhibit L).**

13. Immediately following the disclosure of Plaintiff's protected federal statuses on August 31, 2026, direct **post-filing retaliation** was executed across multiple fronts. At 2:41 p.m., Group Leader Trice abandoned a mandatory supervisors' safety meeting, as defined by the HMGMA Handbook **(Exhibit M),** to target Plaintiff's personal device with an immediate, retaliatory attendance threat **(Exhibit N).** Upon the conclusion of the 1.5-hour HR meeting, Defendant Luna personally escorted Plaintiff to the security gate, photographed his identification card, and informed Plaintiff that his security badge credentials were permanently deactivated. Directly mirrors a termination rather than an administrative leave, stripping Plaintiff of his ability to access on-site credit unions, employee amenities, or gather eyewitness documentation from his coworkers.

14. On September 28, 2026, Plaintiff delivered his physician's formal medical restrictions and return-to-work parameters to Defendant **Luna (Exhibit O).** Within 32 minutes of receipt, Defendant Luna initiated a bad-faith campaign of interactive process sabotage, issuing an immediate, nitpicking clarification request **(Exhibit P).** Plaintiff responded promptly **(Exhibit Q).** On October 1, 2026, Plaintiff delivered his doctor's formal clarification **(Exhibit R).** On October 2, 2026, Defendant Luna continued his obstruction, searching for a pretextual "undue hardship" excuse and a return to work delay by demanding an additional questionnaire. On October 9, 2026, Plaintiff submitted his physician's final certified medical clarification **(Exhibit S),**

explicitly stating that the doctor would refuse to water down anymore of his medical safety parameters for their undue hardship search.

15. On October 16, 2026, Defendant Luna still attempted to issue further repetitive questionnaires to stall the return-to-work track **(Exhibit T).** Plaintiff responded directly **(Exhibit U).** On October 26, 2026, after learning that a neutral medical board (Metlife) had audited the file and fully approved Plaintiff's independent MetLife Short-Term Disability case through November 1, 2026, **(Exhibit V).** Defendant Luna issued a final email maintaining Plaintiff's involuntary, unpaid leave of absence and **permanently shutting down all interactive process channels (Exhibit Z).**

16. To insulate the corporate entity from escalating liability, **EHS Assistant Manager Ryan Michels** engaged in a systemic, premeditated deception of federal safety regulators in direct response to an active **OSHA Rapid Response Investigation (RRI)** mandatory 5-day notice to respond. Defendant Michels willfully committed a federal violation under 18 U.S. Code § 1001 and 18 U.S. Code § 1621 by formally submitting a **fraudulent Certificate of Posting for an OSHA Notification of Alleged Hazard(s) under Complaint Number: 2486829 (Exhibit W)** dated September 9, 2026. Defendant Michels certified on this official corporate document under oath that compliance metrics were met, while simultaneously attaching a deceptive "**Trim A Line 2 MEa - Station 9RH - Baseline 3" template (Exhibit W also see Exhibit Y EJFs).** Defendant Michels falsely maintained to the regulator that the vehicle conveyor line operated at an altered, hyper-slow velocity configuration of **less than one (1) mile per hour (mph)** to make the workstation appear ergonomically safe for a single worker. This material perjury on a certified statement

initially **induced the federal regulator** to rely on a fraudulent baseline, forcing an administrative closure of the initial safety complaint. However, upon Plaintiff providing definitive, unassailable documentary proof exposing this systemic perjury on the certified September 9th response—and detailing the reality of high-velocity commercial production parameters that **push out between 200 and 250 vehicles per shift**—federal authorities immediately recognized the fraud on the agency, resulting in a formal reopening of the active OSHA hazard enforcement complaint. Plaintiff's official **HMGMA Essential Job Functions (EJFs) (Exhibit Y)** explicitly document that his permanent position was situated at the **'Final OK'** station utilizing computer ergonomic configurations across **Sections 4L, and Doors on** proving that Defendant Michels falsified a certified government response statement to mask the dangerous removal of the right-side line operator on Section 4L. This active database obstruction directly mirrors the ongoing fraud infesting active **U.S. Department of Labor Wage & Hour Division Case ID: 5114198** and **OSHA Whistleblower Case #301086472.** This active database obstruction will be formally logged onto the national servers via a **Formal Request for a Compliance Audit sent to the OSHA Directorate in Washington, D.C.** by certified mail **(Exhibit X),** requesting an active audit of OSHA Whistleblower Case #301086472, due to the delayed bureaucratic tactics and **Chapter 3 violations** of the **Whistleblower Protection Manual** of **Investigator Errol Nicholas OSHA (District 4 Atlanta GA).**

## III. COUNT I: DISCRIMINATORY FAILURE TO ACCOMMODATE (ADA)

17. Plaintiff realleges paragraphs 1 through 16.

18. Defendant has possessed absolute, unassailable medical clearance from the Georgia Eye Institute since October 9, 2026, yet continues to maintain a physical gate blockade and badge lockout against a cleared worker. This total administrative freeze constitutes a willful failure to accommodate and a Silent Constructive Discharge under Title I of the ADA.

## IV. COUNT II: ILLEGAL WHISTLEBLOWER RETALIATION AND COERCION

19. Plaintiff realleges paragraphs 1 through 18.

20. Defendant initiated the punitive attendance point overrides, immediate security gate escorts, badge deactivations, and document suppression in direct, malicious response to Plaintiff logging an active **EEOC Charge (No. 415-2026-02564 / No. 415-2027-00097)** and an active **OSHA Whistleblower Complaint (Case #301086472).** This conduct constitutes direct retaliation and economic coercion under ADA Section 503(b).

## V. PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court grant judgment against the Defendant and award the following relief:

- An order awarding full future front pay, structural localized salary differentials, and future lost retirement/health benefits to permanently compensate the Plaintiff for a Permanent Constructive Discharge, due to the Defendant's extreme workplace hostility and malicious retaliatory animus rendering reinstatement wholly unfeasible;
- An order awarding full back pay, lost regular and overtime wages, bonuses, contractually accrued seniority metrics, and compounding interest accumulated since the initial discriminatory badge lockout;

- An order awarding consequential damages for all out-of-pocket expenses, loss of healthcare coverage liabilities, severe emotional distress, acute mental anguish, and severe financial coercion directly resulting from the Defendant's bad-faith administrative blockade and forced unpaid leave;

- An order awarding maximum compensatory damages for the intentional infliction of emotional distress and ongoing injury to the Plaintiff's baseline household stability;

- An order awarding maximum uncapped punitive damages for willful, malicious retaliation and intentional federal database obstruction executed against a qualified disabled safety whistleblower.

## VI. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 42 U.S.C. § 1981a(c), Plaintiff Jason Moore hereby demands a trial by jury on all issues and claims so triable, including compensatory and punitive damages.

Respectfully submitted this 13th day of November, 2026.

Jason Moore,

Plaintiff Pro Se

P.O. Box 3084

Statesboro, GA 30459

Phone: (478) 299-4711

Email: eroom269@gmail.com

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406
(912) 358-2810
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/15/2026

**To:** Mr. Jason D. Moore
P.O. Box 3084
Statesboro, GA 30459
Charge No: 415-2026-02564

EEOC Representative and email: Santiago Amarante
Investigator (Bilingual)
santiago.amarante@eeoc.gov

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 415-2026-02564.

On behalf of the Commission,

Digitally Signed By: Jennifer Bessick
09/15/2026

Jennifer Bessick
Director

**Cc:**

Elizabeth Price
Hyundai Motor Group Metaplant America (HMGMA)
1500 Genesis Drive
Ellabell, GA 31308

Please retain this Notice for your records.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Savannah Local Office
7391 Hodgson Memorial Drive, Suite 200
Savannah, GA 31406
(912) 358-2810
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/20/2026

**To:** Mr. Jason D. Moore
P.O. Box 3084
Statesboro, GA 30459

Charge No: 415-2027-00097

EEOC Representative and email: Donald House
Investigator
donald.house@eeoc.gov

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC will continue its investigation of this charge even though it issues this Notice of Right to Sue at your request.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 415-2027-00097.

On behalf of the Commission,

Digitally Signed By: Jennifer Bessick
10/20/2026

Jennifer Bessick
Director

**Cc:**

S. Eliabeth Price
Hyundai Motor Group Metaplant America (HMGMA)
1500 Genesis Dr.
Ellabell, GA 31308

Please retain this Notice for your records.

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

JASON MOORE,

Plaintiff,

CASE NO.: ____________________

v.

HYUNDAI MOTOR GROUP METAPLANT AMERICA, LLC (HMGMA),

Defendant.

---

LITIGATION PACKET: COMPREHENSIVE EXHIBIT INDEX

The Plaintiff, Jason Moore, *pro se*, respectfully submits this unified Exhibit Index to accompany, ground, and support both his Civil Complaint and his standalone Motion for Appointment of Counsel. This index establishes a single, definitive map of physical documentary evidence to be cross-referenced interchangeably by the Court across all pleadings:

I. COUNSEL SEARCH EXHAUSTION & HARDSHIP EVIDENCE

*(Cited to support the Motion for Counsel under Federal Law)*

- EXHIBIT 1 — Morgan & Morgan, P.A. Formal Rejection Notice

  *Summary:* Written communication from Morgan & Morgan, P.A., declining representation; establishes market exhaustion.

- EXHIBIT 2 — Charles Herman Law Case Capacity Rejection text

  *Summary:* Correspondence from Charles Herman Law confirming the inability to absorb a corporate risk profile of this scale and case capacity.

## II. ADMINISTRATIVE RECORD DELAYS & ESCALATION TRAILS

*(Cited to support both the Complaint facts and the Motion's showing of cross-agency breakdown).*

- EXHIBIT 3 — Plaintiff's September 2, 2026 Emergency Whistleblower Filing

  *Summary:* Form copy of the initial OSHA filing triggered explicitly by Josh Trice's 2:41 p.m. text threat and Dobie Luna's 3:00 p.m. badge lockout.

- EXHIBIT 4 — Investigator Errol Nicholas Jurisdictional Deflection Notice

  *Summary:* Administrative log dated September 4, 2026, documenting the regional office's attempt to deflect the file to the National Labor Relations Board (NLRB).

- EXHIBIT 5 — Plaintiff's Formal Administrative Appeal Log (September 6, 2026)

  *Summary:* Appeal document blocking the jurisdictional push-off and demanding an investigation into the August 31st retaliation window.

- EXHIBIT 6 — U.S. Department of Labor Investigation Opening Notice

  *Summary:* Notice confirming that the Washington, D.C. National Directorate intervention forced the emergency opening of OSHA Whistleblower Case No. 301086472 by Investigator Errol Nicholas.

- EXHIBIT 7 — HunterMaclean Corporate Defense Appearance Letter (November 6, 2026)

  *Summary:* First page of outside corporate defense counsel Shawn A. Kachmar's submission on behalf of HMGMA, demonstrating the asymmetric legal representation facing Plaintiff and confirming Respondent's late filing past the October 20 deadline.

## III. PRE-EMPLOYMENT NOTICE & PRODUCTION FLOOR COMPLIANCE FRAUD

*(Cited inside the Complaint to prove the corporate liability timeline and Michels' regulatory deception).*

- EXHIBIT A — June 11, 2026 Formal Timeclock Notice Email to Brandi Petersen

  *Summary:* Electronic notice to HR Benefits management regarding biometric timeclock bottlenecks and the uncorrected deduction of accrued leave.
- EXHIBIT B — St. Joseph's Urgent Care Appointment Confirmation Email

  *Summary:* Printout dated March 31, 2026, establishing HMGMA's 100% awareness of Plaintiff's visual disability prior to his official hire date of April 27, 2026.
- EXHIBIT C — HMGMA Employee Handbook Policy Extracts

  *Summary:* Core handbook sections defining emergency paid time off departures.
- EXHIBIT D — Josh Trice Text Message Communication Records

  *Summary:* Chronological logs confirming Supervisor Trice's explicit 1.5 occurrence cap agreement for the August 21st and 22nd emergency call-outs.
- EXHIBIT E — HMGMA Corporate Attendance Policy Grid

  *Summary:* Internal company layout defining the parameters and protection bands of contractually accrued Emergency Paid Time Off (EPTO).

- EXHIBIT F — Internal Company Attendance Ledger Screen Capture

  *Summary:* Terminal grab showing Supervisor Trice's bad-faith manual override of Plaintiff's EPTO to fraudulently generate a Phase 1 corrective action.

## IV. INTERACTIVE PROCESS INTERFERENCE & ADVERSE DISCHARGE

*(Cited inside the Complaint facts to prove silent constructive discharge and document concealment).*

- EXHIBIT G — HMGMA 15-Day Accommodation Packet Notice

  *Summary:* Order issued by HR Specialist Luna on August 21, 2026, forcing a night shift line return in lieu of engaging in the interactive process.

- EXHIBIT H — EEOC Inquiry Submission Ticket (August 31, 2026, 6:44 a.m.)

  *Summary:* Digital receipt logging Plaintiff's formal federal discrimination inquiry following acute line velocity hazards.

- EXHIBIT I — Federal OSHA Electronic Hazard Complaint Receipt (7:21 a.m.)

  *Summary:* Confirmation page documenting the formal emergency filing against dangerous, high-velocity conveyor split-takt configurations.

- EXHIBIT J — Protected-Status Management Disclosure Notification Email (1:02 p.m.)

  *Summary:* Written electronic disclosure transmitted to HMGMA executives, notifying them of active live federal litigation tracks.

- EXHIBIT K — 30-Day Forced Unpaid Leave Authorization Document

  *Summary:* Form executed by Brandi Petersen instantly following the receipt of the active federal disclosure notice.

- EXHIBIT L — Dobie Morales Luna Fabricated Correspondence Sheet

  *Summary:* Record exposing that HR Specialist Luna withheld Essential Job Functions for 16 days and fabricated a backdated email on September 18, 2026.

- EXHIBIT M — HMGMA Supervisor Handbook Structural Guidelines

  *Summary:* Policy metrics defining the mandatory execution of safety logs during active production floor sessions.

- EXHIBIT N — Josh Trice Targeted Electronic Threat Record (2:41 p.m.)

  *Summary:* Retaliatory text warning sent directly to Plaintiff's personal device during active corporate supervisor updates and safety meetings.

## V. EYE INSTITUTE MEDICAL CLEARANCE & FINANCIAL PROTECTION LOGS

*(Cited in both the Complaint and Motion to prove absolute medical clearance and MetLife cash stamina)*

- EXHIBIT O — Initial Physician's Visual Restrictions Parameters

  *Summary:* Certified medical parameters delivered to HR Luna on September 28, 2026, defining accommodations.

- EXHIBIT P — HR Specialist Luna's 32-Minute Obstruction Questionnaire

  *Summary:* Instant electronic demand sent by HR to sabotage and delay the interactive return-to-work track.

- EXHIBIT Q — Plaintiff's Written Factual Refutation Statement

  *Summary:* Written record addressing and answering the immediate interactive process barriers deployed by the HR office.

- **EXHIBIT R** — Physician's Secondary Medical Clarification Sheet

  *Summary:* Supplemental medical follow-up executed by Plaintiff's physician and delivered to HMGMA on October 1, 2026.

- **EXHIBIT S** — Georgia Eye Institute Final Return-to-Work Certification

  *Summary:* Certified medical clearance dated October 9, 2026, confirming absolute physical capability under standard plant computer ergonomics.

- **EXHIBIT T** — Dobie Morales Luna Tertiary Redundant Questionnaire

  *Summary:* Stalling document dated October 16, 2026, demonstrating an ongoing search for a pretextual corporate "undue hardship" defense.

- **EXHIBIT U** — Plaintiff's Formal Written Objection & Lockout Notice

  *Summary:* Written communication objecting to continuous bad-faith interactive stalling and administrative building blockades.

- **EXHIBIT V** — MetLife Disability Evaluation Portal Screen Capture

  *Summary:* Independent medical board audit and unassailable approval of Short-Term Disability cash flow funding running cleanly through January 3, 2027.

## VI. MANDATORY RESPONSE PERJURY EVIDENCE

*(Cited to support the Complaint's fraud claims and the Motion's evidentiary merit show).*

- **EXHIBIT W** — Ryan Michels' Certified OSHA Certificate of Posting

  *Summary:* Document dated September 9, 2026, signed under penalty of perjury, attaching a deceptive "Trim A Line" template to mask Section 4L velocities.

- **EXHIBIT X** — Certified Mail National Directorate Escalation Packet

  *Summary:* Certified mail logs and the November 5, 2026, audit package sent to Washington, D.C. that break the regional silence on Case No. 301086472.

- **EXHIBIT Y** — HMGMA Essential Job Functions (EJFs) Positions Matrix

  *Summary:* Internal positions grid created September 2, 2026, proving Plaintiff's assignment to the Final OK station, exposing Michels' documentation as a data fabrication.

- **EXHIBIT Z** — Dobie Morales Luna Final Interactive Freeze Email

  *Summary:* Pacing document dated October 26, 2026, permanently closing interactive channels and locking Plaintiff out on an involuntary unpaid leave.

Respectfully submitted this 13th day of November, 2026.

Jason Moore,

Plaintiff Pro Se

P.O. Box 3084

Statesboro, GA 30459

Phone: (478) 299-4711

Email: eroom269@gmail.com

# EXHIBIT 1

## ꞉tatus Change: An update on your employment claim

message

**lorgan & Morgan, P.A.** <reply@reply.forthepeople.com> Tue, Nov 3, 2026 at 9:10 AI
eply-to: Morgan & Morgan <reply-UHDQNELSBTNEBLOQEMC6PTMLIA.100227@reply.forthepeople.com>
o: eroom269@gmail.com

View Online

MORGAN & MORGAN
AMERICA'S LARGEST INJURY LAW FIRM

Hi Jason,

Thank you for contacting us about your employment claim on 10/29/2026.

We understand how difficult navigating a workplace issue can be, and reaching out for help shows real strength.

Our team has carefully reviewed the details of your claim, and we are sorry to share that our attorneys are unable to represent you at this time.

This doesn't reflect how valid your claim might be. We strongly recommend reaching out to another firm for a second (and even a third) opinion about handling your case. Every attorney evaluates cases differently, and another firm may be better aligned to your situation.

**Here are a few resources to consider:**

- National Employment Lawyers Association: Search NELA's attorney directory to find local lawyers specializing in employee rights
- State Bar Association: Visit your local Bar Association for lawyer referral services and directories in your area
- LawHelp.org: Browse legal help guides and low-cost legal resources by state

# EXHIBIT 2

1:07 5G

(912) 244-3999

Thursday, Oct 29 • 11:38 AM

Texting with (912) 244-3999 (SMS/MMS)

Thank you for reaching out. Unfortunately, I am not currently accepting new clients based on my caseload and commitment to my existing clients, so I'm unable to review your case. This is something I'm normally able to do at no cost. You can find other plaintiff's employment attorneys through NELA-GA, an association of plaintiff's employment lawyers I belong to: https://nelaga.org/lawyers/.

Tap to load preview

Text message

# EXHIBIT 3

**:onfirmation: OSHA Online Whistleblower / Retaliation Complaint filed on 2-Sep-2026**
message

do-not-reply.osha@mail.dol.gov> Wed, Sep 2, 2026 at 6:16 PI
o: eroom269@gmail.com

Thank you! As of September 2, 2026 06:09:54 PM US Central Time, you filed a whistleblower retaliation complaint with OSHA using our online filing system. We advise that you print or save a copy of this email for your records.

The reference number for your complaint is ECN140002

An OSHA representative will contact you using the contact information that you provided in your complaint. It is very important that you respond to such contact; OSHA cannot proceed with an investigation until it has discussed this complaint with you.

If you have questions regarding the status of your complaint, please feel free to call your local OSHA Regional or Area Office.

We appreciate the opportunity to be of service of you.

Note: Please do not reply to this email. This is a system generated email and this email account is not monitored.

---

**noname**
9 KB

# EXHIBIT 4

# Vhistleblower Complaint 301086472

message

**'SHA-WPP-Southeast** <OSHA-WPP-Southeast@dol.gov> Fri, Sep 4, 2026 at 5:47 PI
eply-to: Nicholas, Errol I - OSHA <nicholas.errol.i@dol.gov>
o: eroom269@gmail.com <eroom269@gmail.com>
c: Nicholas, Errol I - OSHA <nicholas.errol.i@dol.gov>

Jason D Moore,

This is to confirm that OSHA received the complaint you filed on September 2, 2026. Based on the information you provided, your complaint has been filed in the wrong forum. OSHA is unable to assist you because the allegations in your complaint do not relate to an OSHA-administered whistleblower protection statute. You may wish to contact the National Labor Relations Board (NLRB): www.nlrb.gov.

If you disagree and/or have additional information that would change this outcome, please reply to this email. If we do not hear from you or receive any additional information within 15 calendar days of receipt of this email, OSHA will conclude that you concur with this action and permanently closed without notice to the party/parties that allegedly retaliated against you. You will not have the opportunity to object to or request review of OSHA's decision to close your complaint.

If you wish to learn more about the protections in the OSHA-administered whistleblower statutes, please visit our website, https://www.whistleblowers.gov/.

Sincerely,

Nicholas, Errol I - OSHA
U.S. Department of Labor
Occupational Safety and Health Administration
Southeast Whistleblower Protection Program

# EXHIBIT 5

# Vhistleblower Complaint 301086472

message

ıson Moore <eroom269@gmail.com>
o: Nicholas, Errol I - OSHA <nicholas.errol.i@dol.gov>

Sun, Sep 6, 2026 at 10:42 PI

**Subject:** I OBJECT: FORMAL STATUTORY OBJECTION AND DEMAND TO INVESTIGATE – Jason D. Moore (Case No. 301086472)

Nicholas, Errol I - OSHA

I am in receipt of your correspondence dated September 4, 2026, delivered at exactly 5:47 PM (EST) attempting to deflect jurisdiction of **Case No. 301086472** to the National Labor Relations Board (NLRB).

**I formally object to this determination. Not only am I fighting my employer to protect my rights, I am now forced to fight the government to enforce my rights.**

Pursuant to my **15-calendar-day administrative right to reply**, I am enclosing timestamped physical evidence that establishes a textbook *prima facie* case of localized employer retaliation for reporting occupational hazards. Your office's attempt to summarily close this file based on a jurisdictional mischaracterization constitutes a direct violation of the Secretary of Labor's **non-discretionary statutory mandates**. I demand this file remain open and be reviewed under the following explicit federal codes:

## I. RECORDING AND REFUTING THE REGIONAL OFFICE'S PRETEXTUAL EXCUSE

For the permanent record, your office's stated excuse for attempting to dismiss this case is that my complaint handles workplace personnel disputes, collective metrics, or union labor relations falling under the jurisdiction of the National Labor Relations Board (NLRB).

I am explicitly placing this excuse on the federal record to reject it as a complete administrative mischaracterization. My file does not contain a collective union grievance or a joint labor strike. My file contains a localized, individual physical safety disclosure regarding an unstaffed, high-velocity two-person assembly station that physically endangered my life due to a documented vision disability. By hiding behind the NLRB excuse, this office is attempting to contract out its non-discretionary statutory duties under Section 11(c) to artificially clear an internal bureaucratic desk backlog.

## II. THE EMPLOYER'S EXPLICIT STATUTORY VIOLATIONS AND JURISDICTIONAL DEMONSTRATION

The National Labor Relations Board (NLRB) completely lacks jurisdiction over this matter. This claim falls strictly and exclusively under OSHA enforcement mandates due to the following specific violations:

- **29 U.S.C. § 660(c)(1) [Section 11(c) of the OSH Act]:** The employer is in direct violation of this statute for executing immediate, material adverse actions following my protected safety disclosure. Prior to my August 31st notice, the employer had advance corporate knowledge of my disability, denied my verbal accommodation request, and issued a strict 15-day accommodation sheet. Instead of allowing the interactive process to play out, the employer immediately forced me onto a hazardous, unstaffed floor, compelling me to file an emergency protected safety notice on August 31st to protect my life. **The employer explicitly violated Section 11(c) by retaliating less than two hours later through Group Leader Josh Trice's 2:41 PM text message threat and HR Specialist II Dobie Morales Luna's 3:00 PM security badge lockout, which served as punitive, material adverse actions specifically designed to penalize my whistleblowing.** Following these immediate retaliatory actions executed by the employer

September 2, 2026, under Case No. 301086472.

- **The Targeted Retaliation Campaign:** Exactly 1 hour and 39 minutes after my safety disclosures, Group Leader Josh Trice issued a hostile disciplinary tracking threat at 2:41 PM. Attached is direct evidence under the **HMGMA handbook** proving that Group Leader Josh Trice abandoned his contractually mandated pre-shift safety meeting **(2:30-2:45 pm)** specifically to personally target my device and continue his intent to build an attendance defense against my employee file for future termination reviews, detailed completely in other government complaint filings—knowing clearly that I was setting in the HR office at this time. This was followed immediately by HR Specialist II Dobie Morales Luna. Upon conclusion of my HR meeting approving me for a 30 day leave of absence to get accommodated, Mr. Dobie Morales Luna escorted me out of the HR department to the security gate executing a complete security badge lockout after my exit at 3:00 PM. This Malicious Act directly mirrors a termination rather than an approved leave of absence for an accommodation, **physically barring me from entering the property to gather witness statements from coworkers or other vital evidence to protect my livelihood,** denying access to onsite incentives like the onsite bank, cafeteria and to **hand-deliver** the very medical sheets HR demanded.
- **29 U.S.C. § 654(a)(1) [The General Duty Clause]:** The employer violated federal law by forcing me to operate a high-velocity, dangerous two-person assembly station completely unsupported while managing a documented vision disability, exposing me to severe physical over-exertion and bodily harm.

## III. THE TIMESTAMPED EVIDENCE OF RETALIATION (ATTACHED TO THIS EMAIL)

- **Exhibit A - Official EEOC Civil Rights Activation (Sent August 31, 2026, at 6:44 AM):** Official confirmation email of **EEOC Inquiry No. 415-2026-02564**. This timestamp conclusively establishes that my federal civil rights track was active before the production workday ever began.
- **Exhibit B - Official OSHA Safety Track Activation (Sent August 31, 2026, at 7:31 AM):** Official confirmation email of **OSHA Online Safety Complaint Reference No. 358157**. This proves my parallel workplace safety tracking file was live with the Department of Labor hours before any punishments were executed.
- **Exhibit C - Formal Written Corporate Safety Disclosure (Sent August 31, 2026, at 1:02 PM):** Formal email sent directly to HR, Talent Management, Benefits, and copied to `compliance@hmgma.com`. This document explicitly details the dangerous, unstaffed line layouts, supervisor harassment, and puts corporate legal on notice of my active, protected federal statuses.
- **Exhibit D - The 15-Calendar-Day Paperwork Deadline Window (Sent August 21, 2026, at 9:46 AM):** Email thread from HR Specialist II Dobie Morales Luna setting a hard deadline of **September 7, 2026** for my medical sheets. His own words state: *"If you encounter any issues... please let me know... so we can discuss whether additional time is needed."*
- **Exhibit E - Advance Corporate Accommodation Interception (Sent August 27, 2026, at 3:59 PM):** Email thread from HR Payroll & Benefits Manager Brandi Petersen documenting that the company was intentionally halting my shift-transfer safety accommodation pending that formal paperwork process. This document serves as absolute, written proof that **the employer actively failed to activate the interactive process after my verbal request (a core protection under Title I of the ADA).** Instead of implementing mandatory interim safety measures while waiting for paperwork, the company deliberately forced me back into the exact physical hazard I was complaining about, risking immediate bodily injury and severe over-exertion.
- **Exhibit F - Group Leader Josh Trice's Retaliatory Metric Manipulation (Sent August 31, 2026, at 2:41 PM):** Direct text message evidence of supervisor harassment. This records Group Leader Josh Trice actively reaching out to target my device and issue an immediate job-security threat less than two hours after my corporate safety disclosure, bypassing company channels while I sat in the active HR leave

official plant operating policy handbook. This mandate explicitly dictates that all Group Leaders are required to remain physically on the floor from **2:30 PM to 2:45 PM** to lead corporate safety exercises and deliver mandatory pre-shift briefings. This policy page establishes absolute proof of malicious intent and selective enforcement: Group Leader Josh Trice intentionally abandoned his contractually mandated physical safety duties on the floor specifically to execute a digital tracking threat against my device.

- **The Material Adverse Action - HR Specialist II Dobie Morales Luna's 3:00 PM Building escort and Badge Lockout:** Executed exactly **19 minutes after Josh Trice's text threat** and **1 hour and 58 minutes after my corporate safety notice**. Following my 1:02 PM disclosures, **HR Specialist II Dobie Morales Luna physically escorted me out of the HR building, marched me directly to the exterior security gate, and verbally informed me that my facility badge access would be cut off permanently.** This severe physical and verbal banishment on Day 10 of a strict 15-day window completely blocks my ability to complete the interactive process or hand-deliver my medical sheets, establishing an undeniable, bad-faith retaliatory termination setup. Furthermore, this badge restriction deliberately cut off my entrance to witness coworkers, actively sabotaging my ability to gather contemporaneous statements. The employer's "policy deadline" defense is completely shattered by the fact that **on August 31, 2026, the company formally approved me for a 30-day leave of absence, effectively extending my timeline to secure my medical accommodations.** To execute a complete physical badge lockout at 3:00 PM on the exact same afternoon my 30-day leave was approved proves absolute bad faith.

## IV. MANDATORY DEMAND FOR IMMEDIATE EVIDENCE PRESERVATION AND DATA FREEZE

Because the employer utilizes automated, rolling database systems—including corporate time-tracking software, access-control badge servers, and internal communications—there is an immediate, catastrophic risk of automated or intentional spoliation of evidence.

I formally demand that the Southeast Whistleblower Protection Program immediately issue a formal **Evidence Preservation Directive and Data Freeze Order** to the employer regarding **Case No. 301086472**. The employer must be legally ordered to preserve, freeze, and isolate:

1. All backend digital database audit trails showing manual overrides on my file by Josh Trice between August 21 and August 31, 2026.
2. Complete historical badge access logs, specifically contrasting the unrestricted leave access logs of May/June 2026 with the restricted deactivation logs of August 31, 2026.
3. All internal emails, text logs, and chat server trails for Group Leader Josh Trice, Team Lead Frost, and HR Specialist II Dobie Morales Luna.

## V. ADMINISTRATIVE ABDICATION AND REGULATORY INDICTMENT

By failing to execute a physical and administrative investigation into these documented accusations, the Southeast Whistleblower Protection Program is in direct violation of **29 C.F.R. § 1977.15** and Chapter 2 of the **OSHA Whistleblower Investigations Manual**.

The agency's refusal to issue requests for information (RFIs) to audit the employer's backend database logs—which would immediately verify the documented manipulation, the May/June baseline access contrast, and the 3:00 PM badge lockout—constitutes an arbitrary and capricious abuse of administrative discretion under **5 U.S.C. § 706**. This attempt to close my file is nothing more than a **bureaucratic shortcut** to avoid executing a complex structural audit of a massive manufacturer.

In the event that the Southeast Whistleblower Protection Program summarily closes Case No. 301086472 without a forensic audit of the attached timestamped evidence, I am fully prepared to exhaust all available

**Protection Programs in Washington, D.C.** Once those administrative remedies are fully exhausted, I am prepared to proceed with an APA lawsuit in United States District Court if needed to enforce my rights.

Furthermore, please be advised that this entire thread, along with all recorded agency determinations, will be preserved for future federal discovery. In the event a private federal civil rights action is initiated via the EEOC/ADA track, this file will be subpoenaed in its entirety and placed directly onto the federal public court docket (PACER) to document this regional office's administrative failures and the employer's absolute statutory non-compliance.

## VI. FORMAL NOTICE OF INTENT TO DISCLOSE RECORD UNDER THE FREEDOM OF INFORMATION ACT (FOIA)

Please be formally advised that pursuant to the **Freedom of Information Act (5 U.S.C. § 552)** and Chapter 23 of the **OSHA Whistleblower Investigations Manual**, I am putting this office on explicit notice of my intent to file an immediate, comprehensive first-party FOIA request upon any administrative closure of this file. This request will mandate the full disclosure of all non-exempt case file materials, including all internal investigator field logs, regional screening memoranda, and any written statements or communication logs submitted to this agency by the employer. I will actively preserve this complete administrative trail to expose any investigative shortcuts or procedural failures on the public record.

I demand that **Case No. 301086472** remain open, these attachments be integrated into the permanent federal record, and this matter be escalated to a regional supervisor for immediate review.

Sincerely,
Jason D. Moore
Active OSHA Whistleblower

[Quoted text hidden]

---

**7 attachments**

**Exhibit F.png**
53 KB

**Exhibit G.png**
337 KB

**Exhibit A.pdf**
362 KB

**Exhibit B.pdf**
72 KB

**Exhibit C.pdf**
100 KB

**Exhibit D.pdf**
226 KB

**Exhibit E.pdf**
185 KB

# EXHIBIT 6

**)ocket-Hyundai Motor Group Metaplant America, LLC-Jason Moore-301086472-9_30_2026**
message

**licholas, Errol I - OSHA** <nicholas.errol.i@dol.gov> Wed, Sep 30, 2026 at 6:56 Pl
o: angela.fields@hmgma.com <angela.fields@hmgma.com>, compliance@hmgma.com <compliance@hmgma.com>,
room269@gmail.com <eroom269@gmail.com>

Please find attached official notice that the above-cited whistleblower retaliation case has been docketed for investigation.

Nicholas, Errol I - OSHA
U.S. Department of Labor
Occupational Safety and Health Administration

Atlanta Region Whistleblower Protection Program

**2 attachments**

**Docket-Hyundai Motor Group Metaplant America, LLC-Jason Moore-301086472-9_30_2026.pdf**
546 KB

**Manage Online Complaint.pdf**
102 KB

# EXHIBIT 7

HunterMaclean
ATTORNEYS

HunterMaclean
Attorneys at Law
Post Office Box 9848
Savannah, Georgia 31412

SHAWN A. KACHMAR
Direct: 912.236.0261
Phone: 912.236.0261
Fax: 912.236.4936
www.huntermaclean.com
skachmar@huntermaclean.com

November 6, 2026

VIA EMAIL (NICHOLAS.ERROL.I@DOL.GOV)

Errol Nicholas
Whistleblower Investigator
OSHA Southeast Whistleblower
Protection Program
U.S Department of Labor

| | |
|---|---|
| OSHA Case No.: | 301086472 |
| Complainant: | Jason D. Moore |
| Respondent: | Hyundai Motor Group Metaplant America |

Mr. Nicholas:

I write in response to the above-referenced Charge in which Jason D. Moore alleges retaliation by Hyundai Motor Group Metaplant America ("HMGMA"). HMGMA denies his allegations.

By filing this response, HMGMA does not waive any legal defenses it may have to Mr. Moore's Charge. For example, as the specific facts are uncovered, HMGMA might raise jurisdictional or procedural defenses as a complete or partial defense and might present and rely upon facts or matters not set forth in this response at a later date if such presentation is necessary. HMGMA also reserves the right to supplement this response to respond to additional facts, information, or other matters as the circumstances might warrant, but does not, however, undertake any obligation to do so.

## Discussion

HMGMA is an equal opportunity employer that operates a state-of-the-art vehicle manufacturing facility in Ellabell, Bryan County, Georgia. It does not discriminate against any employee or applicant for employment based upon factors prohibited by law and prohibits retaliation against employees who exercise rights under applicable law.

Mr. Moore joined HMGMA in late April 2026 as a Production Team Member and remains employed in that role. However, he has been out on leave since August 31, 2026 when he applied for and was granted a request for 30-days of unpaid leave under the Americans with Disabilities Act. (Exhibits A, B). He was concurrently approved for short-term disability leave from August 31, 2026 to November 1, 2026. Although he failed to communicate with HMGMA prior to his

# EXHIBIT A

# :mployee ID #;2103083

message

ıson Moore <eroom269@gmail.com> Thu, Jun 11, 2026 at 5:58 PI
o: Brandi.Petersen@hmgma.com

Good Afternoon Brandi

I spoke with you over the phone when I went on leave on the 29th of May because medical wanted me to get an accomodation from my Dr. I informed you that since my start date April 27th I have only missed two hours which I used EPTO for. When I spoke to you back then I had Three EPTO hours taken. And you said over the phone that you will fix it.Upon looking at my last check stub I see there is now 4 hours taken. You did not fix it the first time and have taken another hour from me for some reason. If this is due to clocking in late at quick start during my training then the 200 people standing in line waiting to clock in on one clock also clocked in late as well.tequila G informed all of us that it would not count against us but seems like it has. I would ask you to please get clarification from her in order to fix this situation. I can go to quick start tomorrow when I get off work and speak to her about this if needed.withbthe limited amount of time issued I can't afford to give up any free time.since the start date of April 27th only 2 hours have been missed please feel free to contact me below if any questions are needed.

Jason Moore
eroom269@gmail.com
478-299-4711

# EXHIBIT B

GEORGIA EYE
INSTITUTE

June 3, 2026

| | |
|---|---|
| Re: | Jason Moore |
| DOB: | 02/22/1986 |
| Age: | 40 years |
| Gender: | Male |

**RE: Medical Clearance for Jason Moore**

To whom it may concern,

Please accept this letter as formal confirmation that my patient, **Jason Moore**, is under my care and has adjusted well to functional vision in one eye.

Having carefully evaluated his ocular health, I can verify that he possesses excellent vision, visual acuity, and spatial awareness. His monocular vision does not pose a safety risk to himself or others, and it will not impede their ability to perform the essential duties of his position.

At this time, **Jason Moore,** is medically cleared to work without any special accommodations or workplace modifications. He is fully capable of safely performing all of his day-to-day work responsibilities.

Please feel free to contact my office directly if you require any additional information or have any questions regarding his visual health.

Sincerely,

**James Beisel OD**
Georgia Eye Institute of the Southeast, LLC
4720 Waters Avenue
Savannah, GA 31404
(912) 354-4800

# EXHIBIT C

Exhibit 7.pdf

publuu.com/flip-book/5



## Canceling Paid Time Off

Meta Pros who need to cancel scheduled PTO must submit a rescheduling request at least two weeks in advance. If two weeks' notice is not feasible, they must notify their direct supervisor as soon as possible.

All rescheduling requests will be reviewed based on departmental needs. There is no limit to the number of rescheduling requests a Meta Pro may submit.

When a Meta Pro cancels a scheduled PTO, they may reschedule the canceled PTO to any open block of available PTO time. The opportunity for the canceled PTO time will be posted in a central area for the entire group or department, whichever is applicable, for 48 hours following the cancellation.

## Emergency Paid Time Off (EPTO)

Emergency Paid Time Off (EPTO) is to be used when a Meta Pro is absent from work and the time missed is not excused. Once a Meta Pro has used all 24 hours of EPTO, any additional absence not covered by approved leaves will be considered unexcused.

New hires receive eight (8) hours of EPTO upon starting employment, with an additional 16 hours granted after completing the 90-day probationary period. EPTO renews annually on January 1 with a total of 24 hours.

EPTO can be used in one-hour increments for up to eight (8) occurrences. Once Meta Pros have reached eight (8) occurrences, the remaining EPTO will have to be used in four (4)- or eight (8)-hour increments. Any remaining EPTO hours less than four (4) hours can be used as one event.

EPTO used immediately before or after a holiday must be scheduled in advance and approved by the Meta Pro's supervisor. Team Leaders are not authorized to approve any type of leave. EPTO is not intended to extend PTO or serve as a substitute for it, nor is it designed to lengthen holiday periods—though it may be scheduled based on availability. To be considered scheduled, EPTO must be arranged before the end of the prior shift.

Meta Pros must obtain approval from their supervisor or a manager before leaving work. Leaving without approval will be considered a voluntary resignation.

Meta Pros may use any remaining unscheduled EPTO to cover absences resulting from being sent home by the onsite medical center, provided the absence is not covered by another form of HMGMA-approved leave.

## Unused PTO and EPTO

If a Meta Pro decides not to schedule PTO during the scheduling period, they may be compensated for all their eligible PTO time by the end of January of the year following the PTO year.

If a Meta Pro regained the PTO time reserved for the shutdown by volunteering or being required to work during that period and was unable to reschedule the time within the same calendar year due to business needs, the regained PTO time will be paid to the Meta Pro by the end of January of the following year. Unused EPTO will be paid out by the end of January of the following year.

Upon separation of employment with HMGMA, Meta Pros will receive a payout for any eligible unused PTO that year, excluding Appreciation PTO.

## Appreciation PTO or Bonus

At HMGMA, we value long-term dedication. To show our appreciation, Meta Pros receive additional PTO hours or a bonus for every 5th year of service, rewarding your commitment with extra time or financial recognition.

Salaried Meta Pros will receive an additional 40 hours of PTO to be used within one (1) year from their anniversary date. Unused appreciation PTO hours hold no monetary value and will neither be paid to Meta Pro nor carried forward beyond the one (1) year duration.

Hourly Meta Pros will receive a lump-sum payment of 40 hours in the last payroll of the anniversary year.

# EXHIBIT D

9:59 5G

(912) 724-0611

Josh this is Jason was texting HR this morning about the possibility of having to be out tomorrow as well. I questioned them about how the point system would work for a mandatory overtime Saturday without any epto. she referred me to ask my GL to answer this question and better advise me on the point system. After reviewing the HMGA handbook it states nothing about mandatory overtime policies relating to call outs. However under Missed Overtime including voluntary without PTO or EPTO it states it will result in corresponding attendance points in accordance with the attendance policy. If this is the case then if I missed tomorrow and called out as the normal procedure an hour before then it would only accumulate 1 point which would generate 1.5 points for the whole weekend.Could you clarify this for me please. Thanks!

Friday • 2:35 PM

To clarify it would be 1.5 total and a discussion planner will be issued for attendance

RCS message

(912) 724-0611

Friday, Aug 21 • 2:35 PM

To clarify it would be 1.5 total and a discussion planner will be issued for attendance

Okay Josh I most likely will not be able to make it tomorrow but you'll know before shift starts in the morning.have a good evening

Friday, Aug 21 • 5:19 PM

Josh I was told to go ahead and let you know the exact moment that I become aware that I will not be in tomorrow instead of waiting until right before the shift starts. So I'm letting you know that I'm not going to make it in tomorrow and will be back Monday have a safe weekend

To clarify it would be 1.5 total and a discussion planner will be issued for attendance

Yes sir I'm aware

RCS message

# EXHIBIT E

Exhibit 5.pdf



# ATTENDANCE

[BA-ER-P-00041]

Meta Pros are vital to maintaining the quality and efficiency of our operations through consistent and timely attendance. Recognizing the impact of absenteeism, we emphasize the shared responsibility of being punctual every scheduled workday, fostering a culture of reliability essential to our collective success.

A workday missed is considered an absence. However, work time missed due to holidays, scheduled PTO, catastrophic events, jury duty, military duty, bereavement leave, a form of approved leave, work-related injury or illness, personal leave, and FMLA shall not be counted as an absence and will not result in corrective action. Meta Pros who fail to report to work for three consecutive days without properly communicating the reason for their absence to their group leader or manager will be considered to have abandoned their job as of the third day and will be subject to corrective action and possible termination.

## Tardiness

Meta Pros who are not present in their work area, appropriately dressed, and ready to begin work at their scheduled starting time will be counted as tardy for attendance purposes. Appropriately dressed means wearing proper team wear clothing, safety shoes, bump caps, and safety glasses where appropriate. In the case of catastrophic event, such as a legally declared emergency which results in the closure of all roads, tardiness can be assessed.

A verifiable catastrophic event such as an accident-causing road blockage of major highways, a major weather-related closure of road, or other acts of nature which result in Meta Pros being tardy will be evaluated on a case-by-case basis. If it is determined by HMGMA that there is a significance adverse impact on HMGMA Meta Pros, the tardy shall not affect a Meta Pro's attendance record.

## Early Departure

Meta Pros who leave prior to the end of their scheduled shift including overtime hours without their group leader's and/or manager's permission are considered to have left early. Such action will be considered job abandonment, and the Meta Pro will be subject to corrective action and possible review for termination.

This does not include instances where a Meta Pro is suffering from a personal medical emergency that physically prevents them from notifying their supervisor or any management prior to leaving the facility. HMGMA may require medical documentation verifying that the Meta Pro suffered a personal medical emergency and was physically unable to notify their supervisor or management prior to leaving the facility.

Team Leaders are not authorized to approve any type of leave.

## Attendance Point System

| Type | Criteria | No Call-In | Called-In less than 1 hour ahead | Called-In more than 1 hour ahead |
|---|---|---|---|---|
| Tardy | Late arrival up to 30 minutes | 0.5 | 0.5 | |
| | Late arrival from 31 minutes to 2 hours | 1.0 | 1 | 0.5 |
| | Late arrival after 2 hours from start of shift | 1.5 | 1.5 | |
| Absent | Any unexcused absence | 2.5 | 2.0 | 1.0 |
| | 3 Consecutive Days – No Call No Show<br>Job Abandonment | 6.0 | 6.0 | 6.0 |
| Early Departure | Departure less than 2 hours from end of shift | Job Abandonment | 1.0 | |
| | Departure more than 2 hours from end of shift or failure to inform supervisor before leaving | | 1.5 | 1.0 |

Attendance is calculated based on a rolling 12-month period

(Continued on next page)





HMG Metaplant America

Exhibit 6.pdf

A Meta Pro is considered to have excessive absenteeism when 1.5 or more attendance points have been accumulated within a rolling 12-month period.

Every Meta Pro is expected to notify his/her group leader and/or manager in advance of any known absence, tardy, early departure or future events.

## Corrective Action Process

The corrective action process is intended to help Meta Pros correct any attendance problems. However, if the Meta Pro's attendance continues to be unacceptable, it could result in further corrective action up to and including termination.

A Discussion Planner should be issued any time a Meta Pro's attendance points equates to a total of 1.5 points. However, if circumstances do not allow this warning to be issued, corrective action can still be taken in accordance with the Policy.

When a Meta Pro's attendance points fall below the acceptable standard, corrective action may be considered. Corrective action is not automatic. Each Meta Pro's attendance record will be reviewed based on its own merit, and the circumstances in each case are considered. The corrective action phases and associated attendance points are shown in the table below.

No termination will take place unless the action is reviewed and approved by the Head of the Human Resources Department

| Discussion Planner | Phase I (Active 6M) | Phase II (Active 12 M) | Phase III (Active 18 M) | Review for Termination |
|---|---|---|---|---|
| 1.5 points | 2.0 points | 4.0 points | 5.0 points | 6.0 points |








HMG Metaplant America

# EXHIBIT F

01.hana.ondemand.com

HMG Metaplant America

USER : 2103083

My Attendance Points

Period

08/30/2026

Summary

Department

General Assembly Department

Section

GA Production Line 2

Job Grade

Team Member

Job Responsibility

Position

GA Line 2 Production B (TM)

Hiring Date

04/27/2026

Probationary Period

false

Corrective Action

Phase 1

MENU HOME BACK

01.hana.ondemand.com

HMG Metaplant America

USER : 2103083

**Summary**

Total Points

2.0

## Detail

| | |
|---|---|
| **Absence type** | **UA2-Abs(Call in,bf ~1hr)** |
| Points | 1.0 |
| Start Date | 08/21/2026 |
| End Date | 08/21/2027 |
| Start Time | 00:00 |
| End Time | 00:00 |
| **Absence type** | **UA2-Abs(Call in,bf ~1hr)** |
| Points | 1.0 |
| Start Date | 08/22/2026 |
| End Date | 08/22/2027 |
| Start Time | 00:00 |
| End Time | 00:00 |

MENU HOME BACK

# EXHIBIT G

M

# )isabilities Accommodation Request Form

message

**obie Morales Luna** <Dobie.Luna@hmgma.com> Fri, Aug 21, 2026 at 9:03 AI
o: eroom269@gmail.com <eroom269@gmail.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>

Hello Jason,

Attached is the accommodation request form that we discussed. Please fill out the attached document and return it to me with supporting medical documents regarding the medical condition. Please provide the documentation by September 7th, 2026.

V/r,

Dobie Morales Luna |도비 모랄러스 루나

Human Resources Specialist II

Hyundai Motor Group Metaplant America, LLC

1500 Genesis Drive, Ellabell, Georgia 31308

Phone: 912-724-8531 | www.hmgma.com

HMG Metaplant America

Global Leader in
Manufacturing Innovation

This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain personal information, confidential information and/or legally privileged information. Any personal information, confidential information and/or legally privileged information shall only be accessed by authorized personnel of Hyundai Motor Group Metaplant America, LLC ("HMGMA") and its approved suppliers and may be used only as permitted by HMGMA and its policies. Contractual restrictions apply to third parties. If you are not the intended recipient, you are hereby notified you have either received this message in error or through interception, and that any review, use, distribution, copying or disclosure of this message or its attachments is strictly prohibited and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of HMGMA. If you received this message in error, please contact the sender by reply e-mail and destroy all copies of the original message.

본 이메일(첨부 파일 포함)은 지정된 수신자만을 위한 것이며, 개인 정보, 기밀 정보 및/또는 법적으로 보호받는 정보를 포함하고 있을 수 있습니다. 모든 개인 정보, 기밀 정보 및 법적으로 보호 받는 정보는 Hyundai Motor Group Metaplant America, LLC (이하 "HMGMA")의 권한을 부여받은 직원 및 승인된 협력사만이 접근할 수 있으며, HMGMA와 그 정책이 허용하는 범위 내에서만 사용되어야 합니다. 제3자에게는 계약상의 제한 사항이 적용될 수 있습니다.

귀하가 본 이메일의 지정된 수신자가 아닐 경우, 본 메시지가 오류 또는 부당한 방식을 통해 전달되었음을 알려드립니다. 본 메시지나 첨부 파일을 검토, 사용, 배포, 복사 또는 공개하는 행위는 엄격히 금지되며, 형사 처벌 및 민사상의 책임을 질 수 있습니다. 모든 개인적인 메시지는 발신자 개인의 견해일 뿐 HMGMA의 견해를 대변하지 않습니다. 본 메시지를 잘못 수신하신 경우, 회신 이메일을 통해 발신자에게 연락해 주시고 원본 메시지의 모든 사본을 파기하여 주시기 바랍니다.

**)isabilities Accommodation Request Form**
message

**obie Morales Luna** <Dobie.Luna@hmgma.com> Fri, Aug 21, 2026 at 9:46 AI
o: jason Moore <eroom269@gmail.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>

Hello Jason,

Just for clarification, the deadline is based on 15 calendar days, not business days. Since the 15th calendar day falls on a Saturday, I have extended the due date by two additional days, giving you a total of 17 calendar days to submit the documentation.

If you encounter any issues obtaining or submitting the paperwork, please let me know as soon as possible so we can discuss whether additional time is needed.

V/r,

Dobie Morales Luna |도비 모랄러스 루나
Human Resources Specialist II
Hyundai Motor Group Metaplant America, LLC
1500 Genesis Drive, Ellabell, Georgia 31308
Phone: 912-724-8531 | www.hmgma.com

HMG Metaplant America

Global Leader in
Manufacturing Innovation

This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain personal information, confidential information and/or legally privileged information. Any personal information, confidential information and/or legally privileged information shall only be accessed by authorized personnel of Hyundai Motor Group Metaplant America, LLC ("HMGMA") and its approved suppliers and may be used only as permitted by HMGMA and its policies. Contractual restrictions apply to third parties. If you are not the intended recipient, you are hereby notified you have either received this message in error or through interception, and that any review, use, distribution, copying or disclosure of this message or its attachments is strictly prohibited and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of HMGMA. If you received this message in error, please contact the sender by reply e-mail and destroy all copies of the original message.

본 이메일(첨부 파일 포함)은 지정된 수신자만을 위한 것이며, 개인 정보, 기밀 정보 및/또는 법적으로 보호받는 정보를 포함하고 있을 수 있습니다. 모든 개인 정보, 기밀 정보 및 법적으로 보호 받는 정보는 Hyundai Motor Group Metaplant America, LLC (이하 "HMGMA")의 권한을 부여받은 직원 및 승인된 협력사만이 접근할 수 있으며, HMGMA와 그 정책이 허용하는 범위 내에서만 사용되어야 합니다. 제3자에게는 계약상의 제한 사항이 적용될 수 있습니다.

귀하가 본 이메일의 지정된 수신자가 아닐 경우, 본 메시지가 오류 또는 부당한 방식을 통해 전달되었음을 알려드립니다. 본 메시지나 첨부 파일을 검토, 사용, 배포, 복사 또는 공개하는 행위는 엄격히 금지되며, 형사 처벌 및 민사상의 책임을 질 수 있습니다. 모든 개인적인 메시지는 발신자 개인의 견해일 뿐 HMGMA의 견해를 대변하지 않습니다. 본 메시지를 잘못 수신하신 경우, 회신 이메일을 통해 발신자에게 연락해 주시고 원본 메시지의 모든 사본을 파기하여 주시기 바랍니다.

**From:** jason Moore <[illegible]@gmail.com>
**Sent:** Friday, August 21, 2026 9:28 AM
**To:** Dobie Morales Luna <Dobie.Luna@hmgma.com>
**Cc:** HMGMA Benefits <hmgmabenefits@hmgma.com>; Angela Douglas <Angela.Douglas@hmgma.com>
**Subject:** Re: Disabilities Accommodation Request Form

**Caution:** This email originates from an external source. Please take care when clicking links or opening attachments. When in doubt, contact hmgma.it.security@hmgma.com.

[Quoted text hidden]

# EXHIBIT H

: [Mr. Jason D. Moore <eroom234@yahoo.com>]
om EEOC <no-reply@service.eeoc.gov>
te: Mon, Aug 31, 2026 at 6:44 AM

**U.S. Equal Employment Opportunity Commission**
**Savannah Local Office**
7391 Hodgson Memorial Drive Suite 200 Savannah, GA 31406
(912) 358-2810
Website: www.eeoc.gov

08/31/2026

ear Mr. Jason D. Moore,

ie U.S. Equal Employment Opportunity Commission (EEOC) has received your inquiry.

**quiry Number:**
415-2026-02564

**iarging Party:**
Mr. Jason D. Moore
PO Box 3084
STATESBORO, GA 30459
478-299-4711
eroom234@yahoo.com

**Respondent:**
Hyundai Motor Group Metaplant America (HMGMA)
1500 Genesis Dr.
ELLABELL, GA 31308
912-724-9477
Brandi.Petersen@hmgma.com

**Regarding:**
Race, Age - I am 40 years of age or older, Color, Disability, Retaliation - I complained to my employer about jc
discrimination
08/29/2026

## What do I need to do now?

### 1. Make an Appointment Using the EEOC Scheduler

An inquiry is **not** a charge of discrimination. To preserve your rights, you must file a charge within certain time limits. Based on the information above, you might need to file a charge on or before **02/25/2027**. The EEOC will explain how to file a charge at your appointment. (If you are unable to make an appointment, we will contact you before the filing deadline date.)

- **Click here to log into the EEOC Scheduler to make an appointment.**

Please log into the EEOC Scheduler using your username—eroom234@yahoo.com—and, if you do not already have a password, the EEOC Scheduler will ask you to create one.

Your EEOC Scheduler account is **not** the same as your EEOC Public Portal account. The EEOC Public Portal allows you to submit and update an inquiry. The EEOC Scheduler allows you to schedule an appointment.

### 2. Provide More Information in the EEOC Public Portal

The more information you provide in advance, the more productive your EEOC appointment will be. Go to the EEOC Public Portal, select "My Inquiries/Charges/Cases," log in, select your inquiry, and then select "Next."

- **Click here to log into the EEOC Public Portal to provide any supplemental information.**

### 3. Get Ready for Your Appointment.

- **Click here to learn about the laws the EEOC enforces.**
- **Click here to learn about filing a charge of discrimination**

Thank you for contacting us, and we look forward to speaking with you.

Sincerely,
U.S. Equal Employment Opportunity Commission

This email is an official notification from the Equal Employment Opportunity Commission (EEOC) regarding EEOC Inquiry No. 415-2026-02564. Please do not reply to this email.

*Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (91 358-2810 and destroy all copies of the original message and attachments.*

# EXHIBIT I

## ;onfirmation: OSHA Online Safety and Health Complaint / Complaint filed on 31-Aug-2026
message

do-not-reply.osha@mail.dol.gov>
o: eroom269@gmail.com

Mon, Aug 31, 2026 at 7:31 AI

Thank you for your submission. Your Safety and Health complaint was received on August 31, 2026 06:21:14 AM US Central Time. Please print or save a copy of this email for your records.

Your reference number is 358157.

An OSHA representative may contact you using the contact information provided in your complaint. It is important that you respond. OSHA may need additional information to proceed with your complaint. If you have any questions regarding the status of your complaint, contact your local OSHA Regional or Area Office at https://www.osha.gov/contactus/bystate.

Note: Do not reply to this email. It was generated by the system and this email account is not monitored.

---

**noname**
9 KB

# EXHIBIT J

# ormal Request for Mandatory Safety medical Leave under the ADA & Notification of Open EOC/OSHA Charges

message

ison Moore <eroom269@gmail.com> Mon, Aug 31, 2026 at 1:02 Pl
o: Brandi.Petersen@hmgma.com, hmgmatalentmanagement@hmgma.com, hmgmabenefits@hmgma.com
c: compliance@hmgma.com
cc: jason Moore <eroom269@gmail.com>

Dear HR and Compliance Department

Please accept this email as a formal request for an immediate temporary leave of absence as a reasonable accommodation under the Americans with Disabilities Act (ADA), pending a specialized medical evaluation for updated vision restrictions.

I am currently experiencing a severe physical and mental health crisis directly caused by a hazardous, unaccommodated working environment, targeted supervisor harassment, and explicit disability discrimination on the assembly line floor.

The company has had 100% documented knowledge of my vision disability since my hire date. During my mandatory pre-employment physical in April, I was explicitly informed by company medical and hiring representatives that my specific ability could and would be fully accommodated at this facility. Relying on that corporate clearance, I accepted this position.

An initial accommodation request was filed in May, during which time the company explicitly placed me on a mandatory safety leave of absence with no strict timeline constraints, informing me that I was legally not permitted to return to the active workplace until an accommodation was established. While the physician at that time did not specify strict line restrictions, that previous assessment failed to account for the fact that my job involves constantly rotating to different sections on the assembly line. Because the May paperwork was completely inadequate to the varying visual demands, speeds, and physical layouts of the different positions I was being placed in over the months after May, the environment proved to be unworkable for my vision condition, and I initiated a second, updated accommodation process.

About a week ago, during this updated process, I explicitly informed HR in person that the fast line pace and rotation demands were severely impacting my vision and health, and I requested a temporary leave of absence until my updated vision accommodations could be evaluated. Despite having previously placed me on a safe mandatory leave in May for this exact condition, HR denied this recent request and sent me back onto the active assembly line, deliberately placing my health, safety, and job security at risk.

Management has continued to force me to work this unaccommodated, fast-moving assembly line, and refused my medical leave request that was given in compliance back in May. On August 21, 2026, Human Resources Specialist II Dobie Morales Luna acknowledged this ongoing issue and emailed me another accommodation sheet to take to a physician. However, due to my work schedule of 11:00 AM until 7:30 PM, I explicitly informed HR that it would be extremely difficult to secure a physician's appointment and get an accommodation request submitted within the tight September 7th, 2026 timeframe provided. Instead of implementing temporary interim safety measures, a modified line pace, or a temporary reassignment while I actively worked to secure this new doctor's appointment around my shift, the company again forced me to remain in a hazardous situation on the active line.

Because the unaccommodated line pace directly conflicted with my vision restriction, it caused immediate physical safety hazards and performance strain. When I raised these safety concerns on the floor, Group Leader **Josh Trice** explicitly refused to provide any interim safety accommodations, stating that he would do

made a direct discriminatory statement to me, explicitly declaring that he was tired of me and that I "should have never been allowed to enter the building" due to my medical condition.

Furthermore, Group Leader **Josh Trice** has engaged in a targeted campaign of intentional harassment by microscopically scrutinizing my work over minor performance issues, holding me to an entirely different and harsher standard than any other employee on the line. Group Leader **Josh Trice** went so far as to explicitly threaten me with termination over line failures and operational issues that I did not cause. In a direct act of bad-faith disciplinary manipulation on Friday, August 21, Group Leader **Josh Trice** explicitly confirmed via text message that a mandatory overtime call-out would result in 1.5 total attendance points; for both days.however, despite my utilizing 4 hours of EPTO for Friday or Saturday specifically to save a 0.5 point and keep my metrics protected under company policy, Group Leader **Josh Trice** subsequently falsified corporate tracking metrics by processing a 2-point attendance occurrence upon my return to predatorily manipulate my employment status. However, after informing HR about issuing a whole point and taking my 4 hours EPTO for a single day, HR did return my 4 hours EPTO but the 2 points remained.

In a direct act of malicious job sabotage and physical endangerment, Group Leader **Josh Trice** intentionally assigned me to sections of the assembly line that strictly require two people, forcing me to handle the workload entirely by myself. Group Leader **Josh Trice** explicitly instructed newly appointed Team Lead **Frost** to refuse me any assistance when I fell behind on the line and strictly ordered Team Lead **Frost** to absolutely never pair me up with another worker for support. This intentional enforcement of physical isolation, a doubled work burden, predatory attendance tracking, targeted disciplinary threats, and a denial of standard floor help directly weaponized my medical condition against me to force errors and break my health.

This combination of a hazardous working environment, HR's recent denial of my leave request despite the May compliance, the structural time constraints imposed by my 11:00 AM to 7:30 PM schedule, intentional isolation, extreme physical overexertion, targeted verbal and disciplinary threats, and an absolute refusal of interim safety measures by Group Leader **Josh Trice** has caused me extreme physical anxiety, panic episodes, elevated blood pressure, and a complete medical breakdown. Per my physical health crisis today, I am currently seeking immediate clinical evaluation and am requesting that HR act consistently with the May compliance: remove the arbitrary September 7th clock, place me on an immediate corporate safety mandatory leave of absence, and do not permit my return to the floor until an updated accommodation is finalized. Forcing me onto that active line today without a settled accommodation creates an immediate hazardous situation that will severely injure me and result in an immediate Workers' Compensation claim.

Please be formally advised that due to these ongoing violations, I have filed an active, time-stamped **whistleblower complaint with the Occupational Safety and Health Administration (OSHA Case #358157)** and have officially opened a discrimination tracking file with the U.S. Equal Employment Opportunity Commission **(EEOC Inquiry No. 415-2026-02564).** I am also currently processing formal enforcement actions against the company with the Georgia Commission on Equal Opportunity (GCEO) and the U.S. Department of Labor (DOL). Group Leader **Josh Trice** has been named personally as the discriminating party across these actions, and Group Leader **Josh Trice** will remain a named party in all future Federal lawsuits regarding this matter. To further intercept his ability to ever again discriminate against low-level workers, his background checks for future leadership positions will be destroyed once it hits a public federal court docket.

I am planning to meet with HR in person today before my 2:30 p.m. shift after this email is sent to formally coordinate this requested safety leave. I am currently away from the assembly line floor to manage this immediate health risk and will not report for my 2:30 p.m. shift. Please provide the necessary paperwork via email so I may concurrently file a claim through our company's short-term disability policy for income protection.

Sincerely,

Jason Moore

2103083

# EXHIBIT K

HMG Metaplant America

Enactment Date: 6/18/2
Revision Date:
Revision Lev
CSO-EHS-F-00

# CONFIRMATION OF REQUEST FOR REASONABLE ACCOMODATION

| | | |
|---|---|---|
| Name (Applicant or Meta Pro)<br>Jason Moore | Today's Date<br>08/31/2026 | |
| Name of Manager:<br>Answar Morgan | Phone: | Date of Request:<br>08/31/2026 |
| Meta Pro's Department:<br>Production | Meta Pro's Job Title:<br>Team Member | |

ACCOMMODATION REQUESTED (Be specific e.g. adaptive equipment, interpreter, etc.)

30-Days temporary unpaid time off to get ADA medical paperwork completed.

REASON FOR REQUEST:

To complete ADA medical paperwork and send to HMGMA HR Benefits.

LENGTH OF TIME ACCOMODATION REQUESTED FOR:

30 Days

Manager, please confirm accommodation request by signing below:

Name (printed) Brandi Petersen Signature: Brandi Petersen Date: 8/31/2026

NOTES/SPECIAL REQUEST:

Approved by HMGMA HR Benefits & Payroll Manager - Brandi Petersen, CPP

Please Return form to Angela.Fields@hmgma.com AND Ryan.Michels@hmgma.com

# EXHIBIT L

# )isabilities Accommodation Request Form

message

**obie Morales Luna** <Dobie.Luna@hmgma.com> Fri, Sep 18, 2026 at 4:31 PI
o: jason Moore <eroom269@gmail.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>

Hello Jason,

I am sending the JFE's again for your providers review. Can you confirm receipt?

V/r,


Dobie Morales Luna |도비 모랄러스 루나

Human Resources Specialist II

Hyundai Motor Group Metaplant America, LLC

1500 Genesis Drive, Ellabell, Georgia 31308

Phone: 912-724-8531 | www.hmgma.com


HMG Metaplant America

Global Leader in Manufacturing Innovation


This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain personal information, confidential information and/or legally privileged information. Any personal information, confidential information and/or legally privileged information shall only be accessed by authorized personnel of Hyundai Motor Group Metaplant America, LLC ("HMGMA") and its approved suppliers and may be used only as permitted by HMGMA and its policies. Contractual restrictions apply to third parties. If you are not the intended recipient, you are hereby notified you have either received this message in error or through interception, and that any review, use, distribution, copying or disclosure of this message or its attachments is strictly prohibited and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of HMGMA. If you received this message in error, please contact the sender by reply e-mail and destroy all copies of the original message.

본 이메일(첨부 파일 포함)은 지정된 수신자만을 위한 것이며, 개인 정보, 기밀 정보 및/또는 법적으로 보호받는 정보를 포함하고 있을 수 있습니다. 모든 개인 정보, 기밀 정보 및 법적으로 보호 받는 정보는 Hyundai Motor Group Metaplant America, LLC (이하 "HMGMA")의 권한을 부여받은 직원 및 승인된 협력사만이 접근할 수 있으며, HMGMA와 그 정책이 허용하는 범위 내에서만 사용되어야 합니다. 제3자에게는 계약상의 제한 사항이 적용될 수 있습니다.

귀하가 본 이메일의 지정된 수신자가 아닐 경우, 본 메시지가 오류 또는 부당한 방식을 통해 전달되었음을 알려드립니다. 본 메시지나 첨부 파일을 검토, 사용, 배포, 복사 또는 공개하는 행위는 엄격히 금지되며, 형사 처벌 및 민사상의 책임을 질 수 있습니다. 모든 개인적인 메시지는 발신자 개인의 견해일 뿐 HMGMA의 견해를 대변하지 않습니다. 본 메시지를 잘못 수신하신 경우, 회신 이메일을 통해 발신자에게 연락해 주시고 원본 메시지의 모든 사본을 파기하여 주시기 바랍니다.


[Quoted text hidden]

**2 attachments**

**J. Moore JFE-Final OK Line 2 Doors On.pdf**
120 KB

# EXHIBIT M

6:56 5G

publuu.com/flip-book/59 23

# HMGMA COMMUNICATIONS

## Open Door Policy

HMGMA believes that each Meta Pro should have the ability to personally address problems as they arise. As with all companies misunderstandings, differences of opinions, and disagreements occur. If issues and concerns are not addressed in a timely manner, those issues and concerns can damage relationships and affect all the parties involved. HMGMA wants and encourages all Meta Pros to openly communicate with one another to resolve misunderstandings, differences of opinion, and disagreements. One way that we can resolve these issues by having open communications with one another and the ability discuss issues and concerns openly.

Unfortunately, there may be times when an agreement cannot be reached. In these situations, HMGMA wants every Meta Pro to know that through the Open Door Policy, they can address these issues in order to achieve a fair and practical solution.

Any member of Employee Relations will assist a Meta Pro should a concern or issue arise.

Again, HMGMA encourages all Meta Pros to discuss the situation in a respectful manner with the party involved. If a resolution is not reached, discuss the situation with the next level of management. The Open Door Policy is meant to be used in a systematic fashion and may be pursued to the top levels of HMGMA's management.

All concerns regarding alleged discrimination or harassment should be reported through the procedure set out in the Equal Employment Opportunity Policy.

## Public Relations

The role of the Communications & Public Relations Section is to ensure that all of the official company information given tothe public and the media is clear, consistent, and accurate. If you are contacted by the media regarding HMGMA business, you should refer the interviewer to the HMGMA Communications & Public Relations Section at communications@hmgma.com. No Meta Pro may portray themselves to the public or to the media as an official HMGMA spokesperson

## Bulletin Board

All HMGMA Bulletin boards are for communicating work related information and information required by law. Meta Pros are prohibited from posting any information or notices directly on any bulletin boards at HMGMA.

## MPTV

The Internal Broadcast System, known as MPTV, provides a continuous stream of content to televisions located throughout the HMGMA facility. All content undergoes a thorough clearance process to ensure that only authorized and appropriate material is displayed within the workplace.

## HMGMA Advisor

The HMGMA Advisor is a bulletin that will be issued to communicate important information to Meta Pros. The HMGMA Advisor will be issued on an as needed basis and will be read during the Pre-Shift Communication Meeting. The HMGMA Advisor will be posted on the HMGMA Bulletin Board for a specified time in order to allow Meta Pros to read it at their leisure

## Pre-Shift Communication Meeting (2:30pm - 2:45pm)

Each team will have a 15-minute communication meeting at the start of each shift. The purpose of this meeting is to provide Meta Pros with information pertaining to production, quality, or safety. This meeting may also be used to discuss sales, benefits, policy updates, or other pertinent information the team may need to know. All Meta Pros must be in their assigned meeting area ready for work at the start of the shift.

*(Continued on next page)*

# EXHIBIT N

(912) 724-0611

shift starts in the morning.have a good evening

Friday, Aug 21 • 5:19 PM

Josh I was told to go ahead and let you know the exact moment that I become aware that I will not be in tomorrow instead of waiting until right before the shift starts. So I'm letting you know that I'm not going to make it in tomorrow and will be back Monday have a safe weekend

To clarify it would be 1.5 total and a discussion planner will be issued for attendance

Yes sir I'm aware

Monday, Aug 31 • 2:41 PM

Jason make sure you communicate if you are going to be out

Monday, · 5:48 PM

RCS message

# EXHIBIT O

# )isabilities Accommodation Request Form

message

**ıson Moore** <eroom269@gmail.com> Mon, Sep 28, 2026 at 10:54 AI
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Brandi.Petersen@hmgma.com, ompliance@hmgma.com

Dear Mr. Dobie

No need for an extension pertaining to my email on Friday September 25, 2026. As predicted and the reason I requested 30 days. Attached is my full Accommodations request referred by my doctors office and is being emailed to you today September 28, 2026, Two days before my approved leave of absence ends, so the **Interactive process can begin.** Due to your unpredicted email responses as with the delayed JEF's I have included in this email reply, Manager Brandi Petersen and HMGMA compliance department Specifically, (Elizabeth Price). So any delays can be minimized. Please be advised that upon my return and due to my August 31, 2026 3:00pm badge lockout I will need to be informed of when and where to go upon my return. Also, I would need to sit down with the exact same managers as I did back on August 31,2026 which includes: Manager Brandi Petersen, Compliance Manager Elizabeth Price, Manager Brian and HR specialist Dobie before my return to the production floor to discuss any changes that have been made. Thanks Greatly!

Jason Moore
ID# 2103083
eroom269@gmail.com
478-299-4711
[Quoted text hidden]

**3 attachments**

**Approved Leave.pdf**
3.9 MB

**Request 1.pdf**
3.8 MB

**request 2.pdf**
3.3 MB

# )isabilities Accommodation Request Form

message

**ison Moore** <eroom269@gmail.com> Mon, Sep 28, 2026 at 11:55 AI
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Brandi.Petersen@hmgma.com, ompliance@hmgma.com

Dear Management Team

Due to the 10:54am email sent of my accommodation request letter being dated for June 3, 2026 I have provided an updated letter with the corrected date so no controversies will exist

**Please provide receipt of these two emails and provide next steps Thanks Greatly!**
[Quoted text hidden]

**Accommodation Request date Corrected.pdf**
63 KB

GEORGIA EYE
INSTITUTE

Sept 23, 2026

| | |
|---|---|
| Re: | Jason Moore |
| DOB: | 02/22/1986 |
| Age: | 40 years |
| Gender: | Male |

**RE: Medical Clearance and Recommended Workplace Accommodations for Jason Moore**

To whom it may concern,

Please accept this letter as formal confirmation that my patient, **Jason Moore**, is under my care and has adjusted well to functional vision in one eye.

Having carefully evaluated his ocular health, I can verify that he possesses excellent vision, visual acuity and awareness. However, due to his **monocular** vision, prolonged visual demands may result in increased strain on his functioning eye and may contribute to symptoms such as **eye fatigue and dizziness.**

In order to allow Mr. Moore to safely and effectively perform his job duties while minimizing visual strain, I recommend the following workplace accommodations:

- Transition from night-shift work to day-shift work, as night-shift duties and reduced lighting conditions place increased visual demands and strain on his functioning eye.
- Pairing/working with a co-worker when performing duties that require increased visual demands, depth perception, or visual awareness, particularly when safety may be a concern.
- Allowing reasonable visual rest breaks as needed if he develops eye strain, visual fatigue, or dizziness.
- Avoiding prolonged or continuous tasks that significantly aggravate his visual symptoms when reasonably possible.

These accommodations are intended to reduce unnecessary visual strain and help Mr. Moore safely maintain his ability to perform his essential job responsibilities.

Mr. Moore is otherwise medically capable of working and, with the above accommodations, should be able to perform his normal work duties safely.

Please feel free to contact my office directly if you require any additional information or have any questions regarding his visual health or recommended accommodations.

Sincerely,

**James Beisel OD**
Georgia Eye Institute of the Southeast, LLC
4720 Waters Avenue
Savannah, GA 31404
(912) 354-4800

# EXHIBIT P

# )isabilities Accommodation Request Form

message

obie Morales Luna <Dobie.Luna@hmgma.com> Mon, Sep 28, 2026 at 12:27 PI
o: jason Moore <eroom269@gmail.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Brandi Petersen
Brandi.Petersen@hmgma.com>

Hello Jason,

To ensure that we fully understand your restrictions and can appropriately assess reasonable accommodation options, please have your healthcare provider provide additional clarification regarding the following restrictions:

1. "Avoiding prolonged or continuous tasks that significantly aggravate his visual symptoms when reasonably possible."

Please have your provider clarify what they consider to be "prolonged" or "continuous" by providing an estimated duration or frequency, if possible. Many of the tasks associated with line work are performed on a continuous basis, so having more specific information will help us determine what duties or positions may be appropriate within your restrictions.

2. "Transition from night-shift to day-shift work, as night-shift duties and reduced lighting conditions place increased visual demands and strain on his functioning eye."

Your current shift in SAP is 2:30 p.m. to 11:00 p.m., while first shift is 6:00 a.m. to 2:30 p.m. Because both shifts may involve periods of reduced natural lighting, please have your provider clarify whether there are specific hours of the day during which you should not work, or whether the restriction is specifically intended to prevent you from working a night-shift schedule regardless of outside lighting conditions. If so, please have your provider clarify what they consider to be "night-shift."

This clarification will help us better understand the medical restriction and appropriately assess available positions and accommodation options.

In the meantime, we will need the updated documentation before we can determine an appropriate return-to-work placement. While awaiting the clarification, I will begin reviewing potential first-shift positions so that we can identify possible options in the event your provider confirms that first-shift hours are consistent with your restrictions.

Please let me know if you or your provider have any questions regarding the clarification being requested.

I have also removed HMGMA Compliance from this reply as this information should only be shared by Human Resources on a "need-to-know" basis.

[Quoted text hidden]

# EXHIBIT Q

# ꞁisabilities Accommodation Request Form

message

**ıson Moore** <eroom269@gmail.com> Mon, Sep 28, 2026 at 1:12 Pl
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Brandi Petersen Brandi.Petersen@hmgma.com>

Thank you for that clarification, I will forward this email over to them right now. However dropping the compliance department from this email thread may not be a good idea because there are other issues pertaining outside this accomodation request that they may or may not be aware of. But per your request I will exclude them from this thread. I will provide you with an update on your 3 questions as soon as possible.

**Please Note:** the 2:30pm til 11:00 PM shift that you are referring to will come to a complete end on October 5, 2026 as phase 2 and the permanent phase 3 will start, with the new Permanent schedule beginning at 4:30pm til 1:00 am. With the upcoming daylight savings time coming to an end in November, there will be absolutely no daylight hours on that shift. Making my first shift accommodations accurate in this situation. However I will follow up when I get this new information to you
[Quoted text hidden]

---

**image001.jpg**
34 KB

# EXHIBIT R

# )isabilities Accommodation Request Form

message

ıson Moore <eroom269@gmail.com> Thu, Oct 1, 2026 at 1:49 PI
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Brandi Petersen Brandi.Petersen@hmgma.com>, compliance@hmgma.com

Dear Mr. Dobie

Thank you for your clarification the other day regarding HR Benefits' disclosure policies. As the employee, patient, and sole authorizing party over my personal health information, I am exercising my absolute right to voluntarily share my records.

Please be formally advised that I have reattached the Compliance Department in this email thread and I am giving 100% full, explicit authorization for the HMGMA Compliance department and (Elizabeth Price) to see, track, and audit my medical file and accommodation requests. The Compliance Department will remain directly included in this email thread going forward to ensure absolute transparency and organizational oversight throughout my active return-to-work placement unless instructed otherwise by the Department itself.Due to your determination that you do not have a business need to include the Compliance Department in this thread is a misconception as you can see below the active filings held against this organization does in fact constitute a business need.

Pursuant to your written request for additional medical clarifications, I am attaching the official clinical addendum executed by Dr. James Beisel, OD, from the Georgia Eye Institute. This formal medical document completely finalizes the record for my Americans with Disabilities Act (ADA) interactive process track:

**Active Federal Case Registrations:** For full organizational transparency, please be advised that my file and return-to-work protections are actively integrated across the following live federal dockets

**OSHA Whistleblower Protection Program:** Case No. 301086472

**OSHA Physical Safety Hazard Branch:** Complaint No. 2486829 (Formally Reopened due to Fabrication of Documentation)

**U.S. EEOC Civil Rights Docket:** Charge No. 415-2026-02564 (Right to Sue Letter Issued September 15, 2026)

**U.S. Department of Labor:** Wage and Hour Division Active Filing complaint # 5114198 (Josh Trice's Unwritten floor policies)

You mentioned that protecting my medical records and accommodation abilities from the compliance department was fully for privacy reasons, but I explicitly reject this administrative excuse. Please be formally advised that I have already forwarded your direct emails removing the compliance department from this thread, along with your stated reasons for doing so, straight back to the Compliance department to ensure absolute transparency. Any further clarification requests or demands regarding my private medical records that have nothing to do with the direct implementation of these clear accommodations will be treated as a direct violation of my privacy and a total breach of HIPAA standards. Attempting to force a medical provider to micro-manage exact manufacturing durations appears to be an effort to over-analyze clinical terminology solely to find a pretextual reason to claim an accommodation is unavailable on the line. Pausing my return-to-work process for this specific reason is exactly why it is necessary for the compliance department to be fully included in this email thread to monitor your compliance with my accommodation request, as issues with this Department has already been risen due to your physical badge lockout on August 31 2026 at 3:00 pm restricting me from the onsite bank and other Employee incentives, also the denial of engaging in the

timeframe to complete getting an appointment scheduled, evaluated and being placed back in the same hazardous situation that I was just complaining about that same day, all while trying to complete this strict timeframe and working a difficult 2nd shift schedule from 11:00am til 7:30pm made it impossible to complete potentially causing corrective actions.Also your delayed JFE's created on September 2, 2026 and not sent to my email to provide to my doctor until September 18, 2026 and now micro managing my doctors recommendations. For these reasons listed above proves that the Compliance Department is necessary for this entire file.

I acknowledge that my physical return-to-work placement is deferred while HR reviews this attached data. My employee profile will reflect this active interactive process pause, with zero attendance points or adverse tracking actions permitted.

As HR has previously confirmed that it is actively reviewing available first-shift positions pending this documentation, and since my provider's official clinical addendum leaves zero ambiguities, I look forward to receiving your formal, written list of compliant first-shift placement options and the requested meeting before being placed back into the production floor, notifying me when my badge is reactivated to perform these in person meetings. If any additional questions or information is needed please do not hesitate to reach out to me with the contact information below. Thanks!

Sincerely,

Jason Moore
ID# 2103083

eroom269@gmail.com

478-299-4711

**Attached:** Georgia Eye Institute Medical Clarification Addendum (09/30/2026

[Quoted text hidden]

---

**2 attachments**

**image001.jpg**
34 KB

**Doctor's Clarification.pdf**
73 KB

| | |
|---|---|
| PATIENT: | Jason Moore |
| PATIENT DOB: | 02/22/1986 |
| ADDENDUM DATE: | 09/30/2026 |
| PROVIDER: | James Beisel OD |

To Whom It May Concern,
This letter serves as official medical clarification regarding the accommodation request and restrictions for the above-named patient.

Below are the detailed medical responses to the specific questions raised regarding his ocular health and workplace accommodations:

Clarification 1: Definition of "Prolonged" or "Continuous" Tasks

- Task Duration Limits: Int he context of Mr. Moore's monocular vision and ocular health. "prolonged" or "continuous" tasks refer to any visual task overhead or continuous focus lasting more than 2 hours without a rotation or break.
- Operational Impact: Continuous tasks exceeding 2 hours significantly increase visual strain, fatigue, and symptoms such as dizziness on his functioning eye.
- Recommended Mitigation: Working overhead for extended periods due to under staffing, working alone on vehicles, or working in a constant "catch-up: mode under high stress places excessive strain on his functioning eye. To maintain safe performance, Mr. Moore should be paired with a co-worker to rotate vehicles/tasks, allowing him to work at a steady, manageable pace.

Clarification 2: Night-Shift Restrictions and Lighting Conditions

- Night-Shift Medical Restriction: From an ophthalmic standpoint, a night-shift schedule is strongly discouraged.
- Physiological Factors: The restriction is not merely a matter of ambient interior lighting or daylight availability. Night-shift work inherently induces natural circadian disruptions and night-time fatigue/drowsiness, which exacerbates lazy eye symptoms, accelerates eye fatigue, impairs depth perception, and directly impacts visual acuity, awareness, and workplace safety.
- Mr. Moore is able to work under artificial lighting no more than 2 hours before his visual symptoms begin, which include dizziness and headaches.
- Shift Recommendations: To minimize demands, strain, and safety risks, Mr. Moore should be transitioned off night-shift duties and places permanently on a standard first shift schedule (6:00 a.m. to 2:30 p.m.)

Summary of Recommended Accommodations
1. Permanent transition from night-shift work to a first-shift schedule.
2. Pairing with a co-worker for tasks requiring increase visual demands, depth perception, or overhead work to allow rotation and prevent prolonged single-operator strain.

3. Reasonable visual rest breaks as needed if visual fatigue, strain, or dizziness develops.
4. Avoidance of continuous visual tasks exceeding 2 hours without a rotation switch.

Please contact our office if you require any additional clinical information.

Sincerely,



**James Beisel OD**
Georgia Eye Institute of the Southeast, LLC
4720 Waters Avenue
Savannah, GA 31404
(912) 354-4800

# )isabilities Accommodation Request Form

message

**obie Morales Luna** <Dobie.Luna@hmgma.com> Fri, Oct 2, 2026 at 11:25 AI
o: jason Moore <eroom269@gmail.com>
c: HMGMA Benefits <hmgmabenefits@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Brandi Petersen
Brandi.Petersen@hmgma.com>, HMGMA Compliance <Compliance@hmgma.com>

Hello Jason,

As we continue reviewing your accommodation request, we need some additional clarification from your healthcare provider regarding the restriction related to artificial light exposure.

Because artificial lighting is present throughout our work areas on both day and night shifts, we need a better understanding of how this restriction applies in the workplace. Specifically, please have your provider clarify the following:

- Whether you must avoid artificial light entirely after approximately two hours of exposure, or whether a period away from artificial light would allow you to resume work.
- If a break from artificial light is required, approximately how long would that break need to be, such as 10–30 minutes, one hour, or another duration?
- After that period away from artificial light, would you be able to return to an artificially lit work environment for another period of time?
- Are there any other measures or modifications related to artificial light exposure that would allow you to safely perform your job functions?

This clarification is necessary so that we can better understand the restriction and evaluate potential accommodations that may allow you to perform the essential functions of a position.

Please submit this clarification to HR Benefits. Once received, I will continue the accommodation review with that information.

[Quoted text hidden]

# EXHIBIT S

# )OBIE'S CLARIFICATION REQUEST

message

**ison Moore** <eroom269@gmail.com> Fri, Oct 9, 2026 at 9:50 AI
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>
c: HMGMA Compliance <compliance@hmgma.com>, Elisabeth Price <Elisabeth.price@hmgma.com>, Samantha.carroll@hmgma.com, randi Petersen <Brandi.Petersen@hmgma.com>, Angela Douglas <Angela.Douglas@hmgma.com>, Nicholas, Errol I - OSHA nicholas.errol.i@dol.gov>, HMGMA Benefits <hmgmabenefits@hmgma.com>, OSHA-WPP-Southeast@dol.gov
cc: jason Moore <eroom269@gmail.com>

Dear Parties,

I noticed that there were no reply to my Monday October 5, 2026 email detailing some of the evidence held against you that I'm sure is being audited right now. However, attached below is the Clarifications requested by Dobie Morales Luna. Please be advised that upon any return to discuss the accommodation layouts, I would need clear communication about the badge lockout that happened on August 31, 2026 for an Administrative Leave. Clarifying that I will be able to access entrance upon my return.

Regards,

Jason Moore
2103083

---

**Clarification.pdf**
58 KB

PATIENT: Jason Moore
PATIENT DOB: 02/22/1986
ADDENDUM DATE: 10/06/2026
PROVIDER: James Beisel OD

To Whom It May Concern,

This letter serves as official medical clarification regarding the accommodation request and restrictions for the above-named patient.

Below are the detailed responses to the specific questions raised regarding his ocular health and workplace accommodations:

Clarification 1: Permanent Transition to First Shift with Partner Pairing:

- Schedule and Pairing: Mr. Moore requires a permanent transition from night shift to a standard day shift (6:00 a.m. to 2:30 p.m.) along with continuous pairing with a co-worker on the assembly line to rotate vehicles.
- Operational Impact: Working paired at all times enables Mr. Moore to maintain a steady, manageable work pace. This prevents high-stress "catch-up mode" and avoids triggering visual symptoms (such as eye strain or fatigue) that occur when working alone. Under this paired system, Mr. Moore will not require any additional visual breaks away from the assembly line.

Clarification 2: Clarification on Early Morning Darkness and Artificial Lighting:

- Shift Start Exposure: Concerning the minimal outside darkness experienced at the beginning of a day shift (6:00 a.m. to sunrise around 8:00 a.m.), Mr. Moore is fully capable of working through this initial early-morning period under standard lighting.
- Symptom Prevention: Working this brief morning period before daylight will not require extra breaks, nor will it trigger visual system flare-ups, drowsiness, lazy eye symptoms, or eye fatigue in the manner that a continuous night-shift schedule induces. Once daylight arises, standard indoor lighting during day-shift hours is fully tolerated.

Summary of Recommended Accommodations

1. Permanent transfer from night shift to a day shift schedule. (6:00 a.m. to 2:30 p.m.)

2. Mandatory co-worker pairing on the assembly line to allow regular rotation and pace management.

3. Elimination of continuous night-shift duties exceeding 2 hours under artificial light during dark hours.

Please contact our office if you require any additional clinical information.

Sincerely,

**James Beisel OD**
Georgia Eye Institute of the Southeast, LLC
4720 Waters Avenue
Savannah, GA 31404
(912) 354-4800

# EXHIBIT T

**mportant information regarding your accommodation request - Jason Moore - 2103083 - 0/16/2026**

message

**obie Morales Luna** <Dobie.Luna@hmgma.com>
o: jason Moore <eroom269@gmail.com>

Fri, Oct 16, 2026 at 11:51 Al

Jason - We have received your recent emails, including the information from your health care provider. Thank you.

Accommodation request. As you know, HMGMA already provides regular job/station rotation on the assembly line. Your doctor recommends, and you have requested, co-worker pairing at all times, separate from and in addition to regular rotation that already occurs. Without addressing the other components of your request, HMGMA is unable to provide an accommodation of co-worker pairing at all times due to safety concerns (two people at one station, some of which are constricted areas, creates a hazard), impacts on quality and production, and because the ADA does not require employers to reallocate the essential functions of a position. If we misunderstood the co-worker pairing request or there are other or different accommodations that you and your doctor believe will help you safely perform the essential functions of the job, please let us know. Alternatively, let me know if there are other HMGMA positions that are open and available that you and your doctor believe you can perform with or without accommodations. Please let me hear back from you on or before October 23 or let me know if you need more time to respond.

Your current status. Because HMGMA cannot agree to your request for co-worker pairing, you will remain on unpaid administrative leave while we continue to work through this process and discuss other reasonable options. Questions about return-to-work logistics, including building and badge access, will be addressed with you once a return date is determined.

Communications. So that your accommodation request is handled promptly and consistently, please direct all communications about it to me. HMGMA will respond to accommodation-related information in the order and manner needed to review it properly. We may not respond to every message individually, but we will respond when we have substantive information to anything relevant to your accommodation request and our ongoing discussions.

Your medical information will be kept confidential and shared within the company only with those who need it to evaluate your request. We ask that you limit your accommodation-related emails to me. Please note that HMGMA can only protect the confidentiality of medical information it controls.

The company will respond to your agency charge through the applicable process, and that process is separate from our review of your accommodation request.

V/r,

Dobie Morales Luna |도비 모랄러스 루나

Human Resources Specialist II

Hyundai Motor Group Metaplant America, LLC

1500 Genesis Drive, Ellabell, Georgia 31308

# EXHIBIT U

**mportant information regarding your accommodation request - Jason Moore - 2103083 - 0/16/2026**
message

**ison Moore** <eroom269@gmail.com> Fri, Oct 16, 2026 at 3:16 PI
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>
c: Nicholas, Errol I - OSHA <nicholas.errol.i@dol.gov>, OSHA-WPP-Southeast@dol.gov, osha.dwpp@dol.gov, Elisabeth Price Elisabeth.price@hmgma.com>, Samantha.carroll@hmgma.com, Brandi Petersen <Brandi.Petersen@hmgma.com>, info@eeoc.gov
cc: jason Moore <eroom269@gmail.com>

10/16/2026

Mr. Dobie

Thank you for your late end of the week last minute email of more clarifications from the doctor. This was expected and which cites more ADA violations for interference and fabricating excuses for an undue hardship that you are phishing for pertaining to pairing. Something that this corporation is accustomed of doing as in Michael Ryan's fabrication to a federal regulator under penalty of perjury. I have forwarded your email to my doctor for immediate review and clarification as I am able,cleared, and willing to return to work. As I mentioned in my past emails to you that I gave 100% authorization to the management, organizations, and investigators I include in this thread which includes active government regulators and corporate council. With all the government filings initiated and watching over this dispute I do not think it is appropriate just to include yourself alone in this thread as the direct ADA violator in this dispute. I will continue to include these organizations in my email threads and as a reminder anything you send me will be downloaded as a PDF and attached so all other parties can oversee the ADA violations. They will see a PDF of this email you sent me today in this reply.

You mentioned in your email to respond by October 23rd this strict deadline directly mirrors your ADA violation back on August 21st 2026 with a 15 day time frame and denial to engage in the ADA interactive process.

Please be aware that this last minute 14 day silence breaker by you does not give legal counsel or the corporation an extension to their upcoming position statement deadline of October 20th for whistleblower investigator Mr. Nicholas. I will be waiting on that position statement to determine my next move.

You also mentioned in your email that you will respond to the secondary EEOC charge for retaliation. That charge is signed and is prepared to be sent to corporate counsel within their 10-day time frame to be served.

As soon as I hear back from my doctor I will submit any corrections clarifications or misunderstandings you may have and any recommendations that my doctor issues to hopefully stop this endless stalling tactic that you're phishing for.

I will submit any updates when I get them.

Sincerely,

Jason Moore
2103083

[Quoted text hidden]

**2 attachments**

**image001.jpg**
34 KB

**ccc.pdf**
202 KB

## mportant information regarding your accommodation request - Jason Moore - 2103083 - 0/16/2026

message

**ison Moore** <eroom269@gmail.com> Mon, Oct 19, 2026 at 1:48 PI
o: Dobie Morales Luna <Dobie.Luna@hmgma.com>, Brandi Petersen <Brandi.Petersen@hmgma.com>, Elisabeth Price Elisabeth.price@hmgma.com>, Samantha.carroll@hmgma.com
c: osha.dwpp@dol.gov, OSHA-WPP-Southeast@dol.gov, Nicholas, Errol I - OSHA <nicholas.errol.i@dol.gov>, HMGMA Compliance compliance@hmgma.com>
cc: jason Moore <eroom269@gmail.com>

Please read attachment from Mr Dobie Morales Luna. I informed Mr Luna in my email earlier that my doctor will not change his recommendations for him to find an excuse for an undue hardship. The clarification received on October 9th is the final clarification that my doctor will provide

[Quoted text hidden]

**2 attachments**

**image001.jpg**
34 KB

**Dobie Luna's denial response.pdf**
209 KB

# EXHIBIT V

GSSP-US Digital ...
leave.online.metlife.com

| | |
|---|---|
| Program | STD |
| Received Date | 09/10/2026 |
| Benefit Start Date ⓘ | 09/14/2026 |
| Approved Through Date ⓘ | 01/03/2027 |
| Status | Approved |

## Additional Actions

Personal Information

Download to PDF

Add Comment / Document

View Uploaded Documents

Download Forms

Manage Claim/Time Off

View Older Events

Update Payment Method

Plan My Leave

Feedback

MetLife

Privacy Policy Terms of Use Contact Us

GSSP-US Digital ...
leave.online.metlife.com

Short Term Disability.
$1191.00 TOTAL CONSUMED




Feedback

MetLife

# EXHIBIT W

**U.S. Department of Labor**

**Occupational Safety and Health Administration**
Savannah Area Office
450 Mall Boulevard Suite J
Savannah, GA 31406

September 9, 2026

Jason Moore
Po Box 3084
Statesboro, GA 30459
eroom269@gmail.com

RE: OSHA Complaint No. 2486829

Dear Jason Moore:

Hyundai Motor Group Metaplant America (hmgma) has advised me that the hazards you complained about have been investigated. The employer states that, if a hazard was found to exist, the necessary steps have been taken to correct the hazardous condition. A copy of the employer's letter is enclosed.

You will notice on the enclosure that some information was deleted. This was done for privacy reasons.

With this information, OSHA believes the case can be closed on the grounds that the hazardous conditions have been corrected (or no longer exist). If you do not agree that the hazards you complained about have been satisfactorily abated, please contact us in writing by September 29, 2026, at:

Audrey D. Windham
USDOL/OSHA/Savannah Area Office
450 Mall Boulevard Suite J
Savannah, GA 31406
Telephone: (912) 652-4393
E-Mail: OSHASavannah@dol.gov

If we do not hear from you within that time, we will assume that the hazard has been corrected or eliminated, and we will take no further action with respect to this case.

Section 11(c) of the Occupational Safety and Health Act protects employees from being discriminated against because of their involvement in protected activities related to safety and health. If you believe you are being treated differently or action is being taken against you because of your safety or health activity, you may file a complaint with OSHA. You should file this complaint as soon as possible, because OSHA normally can accept only those complaints filed within 30 days of the alleged discriminatory action.

Your action on behalf of safety and health in the workplace is sincerely appreciated.

Sincerely,

CHAD MARTIN
Digitally signed by CHAD MARTIN
Date: 2026.09.22 11:20:52 -04'00'

Audrey D. Windham

Area Director

HMG Metaplant America HMG Metaplant America

September 9, 2026

Occupational Safety and Health Administration
Savannah Area Office
450 Mall Boulevard Suite J Savannah, GA 31406

**RE: OSHA Complaint No. 2486829**

To Whom It May Concern,

On August 31, 2026, HMGMA received OSHA Complaint No. 248682. Over several days the alleged workplace hazard, was evaluated and we would like to advise in writing about the results of our investigation. I have also attached the signed Certificate of Posting.

Alleged Workplace Hazards

1. **The employer is exposing employees to physical stress hazards in that effective protections are not provided to employees who perform high-paced repetitive hand motions, twisting, and bending for extended time periods while working on and around the high-speed vehicle conveyor for uninterrupted shifts.**
   HMGMA has implemented a comprehensive ergonomics program to identify, evaluate, and reduce physical stress hazards associated with production activities. Baseline ergonomic assessments are conducted on all manual process workstations to assess risk factors and implement engineering and administrative controls, such as workstation and skillet height adjustments, to reduce bending, reaching, and other ergonomic exposures. (Figure 1) In response to concerns regarding the vehicle conveyor, HMGMA's Maintenance and Engineering teams have verified that the conveyor is operating at the lowest practical production speed, less than 1 mph, to help ensure employee safety while maintaining required vehicle quality standards.
   HMGMA also maintains a formal Ergonomics Policy that includes job rotation procedures, ergonomic risk mapping, and scheduled rotations every two hours to reduce repetitive motion and cumulative trauma exposures. Additionally, post-injury ergonomic evaluations are conducted to identify contributing factors, reinforce proper body mechanics, and implement corrective actions where appropriate. Employees also have access to an early intervention program that provides prompt onsite healthcare evaluation and treatment when discomfort or symptoms are first reported. Through these measures, HMGMA continuously evaluates ergonomic risks and implements controls designed to minimize the potential for musculoskeletal disorders and support a safe working environment.

HMGMA is fully committed to following Occupational Industrial Safety and Health policies and providing a safe worksite for employees.

Please review and let us know if we can be of further assistance in this inquiry.

Sincerely,

Ryan Michels
EHS Assistant Manager

HMG Metaplant America HMG Metaplant America

Attached: Photos and Certificate of Posting

**Figure 1- Baseline and Follow-up Ergonomic Assessments**

Trim A Line 2 MEa - Station 9RH - Baseline 3





Person 1

Person 1

Inseer Composite Rank




Inseer Composite Rank



HMG Metaplant America HMG Metaplant America

**Figure 2 – Signed Certificate of Posting**

Attachment A

**CERTIFICATE OF POSTING**
**OSHA NOTIFICATION OF ALLEGED HAZARD(S)**

Employer Name: Hyundai Motor Group Metaplant America (hmgma)

Complaint Number: 2486829

Date of Posting: 09/09/26

Date Copy Given to an Employee Representative: 09/09/26

On behalf of the employer, I certify that a copy of the complaint letter received from the Occupational Safety and Health Administration (OSHA), has been posted in a conspicuous place, where all affected employees will have notice, or near such location where the violation occurred, and such notice has been given to each authorized representative of affective employees, if any. This notice was or will be posted for a minimum of ten (10) working days or until any hazardous conditions found are corrected.

[signature]
Signature

EHS Assistant Manager
Title

# EXHIBIT X

M

# ;ECOND NOTICE: Procedural Non-Compliance, Backdating Concerns, and Overdue Employer \DR/Position Statement – Case #301086472

message

ıson Moore <eroom269@gmail.com> Thu, Nov 5, 2026 at 6:54 AI
o: Nicholas, Errol I - OSHA <nicholas.errol.i@dol.gov>, OSHA-WPP-Southeast@dol.gov, osha.dwpp@dol.gov
cc: jason Moore <eroom269@gmail.com>

Mr. Errol Nicholas District(4) Atlanta GA

I'm emailing you a second time to check the status of this whistleblower complaint (#301086472). There was an email provided to you on October 27th 2026 for the same status update that you have completely ignored. As I try to find out the status of the employers position statement deadline of October 20th 2026, there are some other contradictions that need to be addressed. This whistleblower complaint was initiated on September 2nd 2026 however you tried to brush this case off to the National Labor board on September 4th 2026. I immediately appealed that decision on September 6th 2026 and heard nothing from that appeal for 24 days until I cc'd the national headquarters in our communication and you finally opening of the investigation on September 30th 2026. The contradiction here is that you open the investigation on September 30th 2026 but back dated the documents sent on that same day to September 2nd 2026 possibly hiding a bureaucratic delay on this complaint. As you are aware of an EEOC right to sue notice issued on September 15th 2026 my good faith patience is running thin on trying to see if HMGMA elected to participate in The Whistleblower protection ADR program from their October 20th 2026 position statement deadline.
I am writing to request a status update and to raise a procedural concern regarding the investigation of my whistleblower complaint.

The respondent's position statement in this matter was due to your office on October 20th, 2026. I followed up via email on October 27th, 2026, requesting a status update, but I have not received a response.

I am invoking **Chapter 3 of the OSHA Whistleblower Investigations Manual**, which mandates strict communication, transparency, and data-logging requirements that are currently not being met:

1. **Mandatory Sharing of the Respondent's Defense:** Section III of Chapter 3 explicitly requires that the complainant be informed of the respondent's position and evidence, either through a full copy of their submission or a detailed summary, to allow for a proper rebuttal.

2. **Data Entry and Server Logging Requirements:** Chapter 3 mandates that all critical case milestones, communication logs, and evidence submissions—including the receipt or delinquency of the employer's position statement—be promptly and accurately entered into the Whistleblower Information System (WBIS) database.

3. **Duty of Active Communication**: The manual requires investigators to maintain open communication with the complainant regarding these major case milestones.

The ongoing silence from your office prevents me from exercising my regulatory right to review and rebut the employer's assertions, and raises concerns regarding the administrative completeness of the WBIS file.

Please advise in writing ASAP the following:

- Did the respondent submit their position statement by the October 20th deadline?
- If they did submit it, please immediately forward a copy or summary to me so I may begin my rebuttal.
- If they failed to submit it, has this delinquency been formally logged into the WBIS system, and what enforcement actions are being taken by your office to move this investigation forward?

I am also printing this entire file dated back to its original filing date of September 2nd 2026 and forwarding its entirety to the Washington DC Headquarters and to the Directorate of the Whistleblower Protection program to request a formal supervisory review of this case file and a compliance audit of the WBIS entries by Certified Mail and have also included the Headquarters in this communication for an immediate audit of the WBIS system.

As I mentioned previously that upon a civil complaint filing this file can and will be subpoenaed in its entirety and placed onto a federal court docket PACER for the entire world's scrutiny. The Plaintiff is currently finalizing a formal Civil Complaint and Application to Proceed In Forma Pauperis for immediate filing in the United States District Court. **Any back-channel communications between this regulator and the employer without my knowledge will be exposed during federal discovery.**

Thank you for your prompt attention to this matter

# EXHIBIT Y

# JOB FUNCTION EVALUATION

☑ Regular Job ☐ Transitional Job

| | | | |
|---|---|---|---|
| Employee Name | Jason Moore | Claim Number | |
| Company Name | Hyundai Motor Group Metaplant Am | Department | General Assembly |
| Job Title | Final OK - Line 2 Station 4L | Full or Part Time | Full-Time |
| Person completing JFE | Ian Burns ATC | Date of JFE | 9/2/2026 |

**Work Environment** Percent of time indoors 100 % Percent of time outdoors ____ %

☐ Extreme Hot ☐ Dustiness ☐ Below Ground ☐ Persistent Excessive Noise
☐ Extreme Cold ☐ Dampness ☐ Uneven Ground ☐ Moving Vehicle
☐ Heated area ☑ Vibrations ☐ Fumes/Gases ☑ Works with Others
☑ Air Conditioned ☐ Unprotected Height ☐ Chemicals ☐ Works Alone
☑ Ventilated ☑ Protective Equipment Comment: Bump Cap, Safety Shoes, Safety Glasses, Gloves

**Work Activity** Check Number of Hours/Day; Check Frequency

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Over 8 | Continuously | Intermittently |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stand | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☑ | ☐ |
| Walk | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ |
| Sit | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Drive | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Work Postures** Check Number of Hours/Day

| | over 6 | 3 - 6 | under 3 | None | | over 6 | 3 - 6 | under 3 | None |
|---|---|---|---|---|---|---|---|---|---|
| Reach | ☑ | ☐ | ☐ | ☐ | Squat | ☐ | ☐ | ☐ | ☑ |
| Handle Above Shoulder | ☑ | ☐ | ☐ | ☐ | Bend at Waist | ☐ | ☐ | ☑ | ☐ |
| Handle Below Shoulder | ☐ | ☑ | ☐ | ☐ | Twist at Waist | ☐ | ☐ | ☑ | ☐ |
| Push or Pull | ☑ | ☐ | ☐ | ☐ | Climb Ladders | ☐ | ☐ | ☐ | ☑ |
| Kneel | ☐ | ☐ | ☐ | ☑ | Climb Stairs | ☐ | ☐ | ☐ | ☑ |
| Crawl | ☐ | ☐ | ☐ | ☑ | Tilt Head | ☐ | ☑ | ☐ | ☐ |

**Physical Demands** Check Number of Hours/Day

| **Right Hand** | over 6 | 3 - 6 | under 3 | None | **Left Hand** | over 6 | 3 - 6 | under 3 | None |
|---|---|---|---|---|---|---|---|---|---|
| Keyboarding | ☐ | ☐ | ☐ | ☑ | Keyboarding | ☐ | ☐ | ☐ | ☑ |
| Fine Manipulation | ☐ | ☐ | ☑ | ☐ | Fine Manipulation | ☐ | ☐ | ☑ | ☐ |
| Forceful Gripping | ☐ | ☐ | ☑ | ☐ | Forceful Gripping | ☐ | ☐ | ☑ | ☐ |

| Lift/Carry | Frequency | Tools/Equipment Used |
|---|---|---|
| 0-10 lbs | 6-7 hours | Head Piece Trim, Side Arm Trim, Center piece trim, Drill, Lift Gate button, Handle Trim |
| 11-25 lbs | | |
| 26-50 lbs | | |
| 51-75 lbs | | |
| 76-100 lbs | | |

**Work Hours**

Number of Work Hours per Day: 8 Number of Work Days per Week: 5
Number of Breaks per Day: 3 Length of Breaks: Two 10 minute, One 3 minute

**Miscellaneous** (Include other job demands, i.e., fine hand manipulation, foot controls, continuous posture)

Light duty available: ☐ Yes ☐ No

Required to install the headpiece trim with an Overhead press until it clicks into place, and use of drill and 2 bolts to secure.
Required to install 2 side arm trim pieces with an OH press until it clicks into place, and use of drill and 2 bolts to secure.
Required to install the centerpiece trim with an OH press until it clicks into place, and use of drill and 2 bolts to secure.
Required to install the handle trim with an OH press until it clicks into place.
Required to make a connection to install the lift gate button with an OH press.

# JOB FUNCTION EVALUATION

☑ **Regular Job** ☐ **Transitional Job**

| | | | |
|---|---|---|---|
| Employee Name | Jason Moore | Claim Number | |
| Company Name | Hyundai Motor Group Metaplant Am | Department | General Assembly |
| Job Title | Final OK - Line 2 Station 4L | Full or Part Time | Full-Time |
| Person completing JFE | Ian Burns ATC | Date of JFE | 9/2/2026 |

**Work Environment** Percent of time indoors 100 % Percent of time outdoors ____ %

| | | | |
|---|---|---|---|
| ☐ Extreme Hot | ☐ Dustiness | ☐ Below Ground | ☐ Persistent Excessive Noise |
| ☐ Extreme Cold | ☐ Dampness | ☐ Uneven Ground | ☐ Moving Vehicle |
| ☐ Heated area | ☑ Vibrations | ☐ Fumes/Gases | ☑ Works with Others |
| ☑ Air Conditioned | ☐ Unprotected Height | ☐ Chemicals | ☐ Works Alone |
| ☑ Ventilated | ☑ Protective Equipment Comment: Bump Cap, Safety Shooes, Safety Glasses, Gloves | | |

**Work Activity** Check Number of Hours/Day / Check Frequency

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Over 8 | Continuously | Intermittently |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stand | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☑ | ☐ |
| Walk | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ |
| Sit | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Drive | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Work Postures** Check Number of Hours/Day

| | over 6 | 3 - 6 | under 3 | None | | over 6 | 3 - 6 | under 3 | None |
|---|---|---|---|---|---|---|---|---|---|
| Reach | ☑ | ☐ | ☐ | ☐ | Squat | ☐ | ☐ | ☐ | ☑ |
| Handle Above Shoulder | ☑ | ☐ | ☐ | ☐ | Bend at Waist | ☐ | ☐ | ☑ | ☐ |
| Handle Below Shoulder | ☐ | ☑ | ☐ | ☐ | Twist at Waist | ☐ | ☐ | ☑ | ☐ |
| Push or Pull | ☑ | ☐ | ☐ | ☐ | Climb Ladders | ☐ | ☐ | ☐ | ☑ |
| Kneel | ☐ | ☐ | ☐ | ☑ | Climb Stairs | ☐ | ☐ | ☐ | ☑ |
| Crawl | ☐ | ☐ | ☐ | ☑ | Tilt Head | ☐ | ☑ | ☐ | ☐ |

**Physical Demands** Check Number of Hours/Day

| **Right Hand** | over 6 | 3 - 6 | under 3 | None | **Left Hand** | over 6 | 3 - 6 | under 3 | None |
|---|---|---|---|---|---|---|---|---|---|
| Keyboarding | ☐ | ☐ | ☐ | ☑ | Keyboarding | ☐ | ☐ | ☐ | ☑ |
| Fine Manipulation | ☐ | ☐ | ☑ | ☐ | Fine Manipulation | ☐ | ☐ | ☑ | ☐ |
| Forceful Gripping | ☐ | ☐ | ☑ | ☐ | Forceful Gripping | ☐ | ☐ | ☑ | ☐ |

| Lift/Carry | Frequency | Tools/Equipment Used |
|---|---|---|
| 0-10 lbs | 6-7 hours | Head Piece Trim, Side Arm Trim, Center piece trim, Drill, Lift Gate button, Handle Trim |
| 11-25 lbs | | |
| 26-50 lbs | | |
| 51-75 lbs | | |
| 76-100 lbs | | |

**Work Hours**

Number of Work Hours per Day: 8 Number of Work Days per Week: 5

Number of Breaks per Day: 3 Length of Breaks: Two 10 minute, One 3 minute

**Miscellaneous** (Include other job demands, i.e., fine hand manipulation, foot controls, continuous posture)

Light duty available: ☐ Yes ☐ No

Required to install the headpiece trim with an Overhead press until it clicks into place, and use of drill and 2 bolts to secure.
Required to install 2 side arm trim pieces with an OH press until it clicks into place, and use of drill and 2 bolts to secure.
Required to install the centerpiece trim with an OH press until it clicks into place, and use of drill and 2 bolts to secure.
Required to install the handle trim with an OH press until it clicks into place.
Required to make a connection to install the lift gate button with an OH press.

# EXHIBIT Z

## mportant information regarding your accommodation request - Jason Moore - 2103083 - 0/16/2026

message

obie Morales Luna <Dobie.Luna@hmgma.com> Mon, Oct 26, 2026 at 10:54 AI
o: jason Moore <eroom269@gmail.com>

Jason,

We did not hear back from you by 10/23 with the clarifying information from your doctor we requested, nor have you asked for additional time. We were notified, however, that your application for short-term disability benefits through 11/1 was approved.

Accordingly, we will continue your leave through 11/1. Before returning to work, we will need clearance from your doctor and if you are still requesting the accommodations previously requested, we will need the clarifying information from your doctor that we have asked for. October 9th, 2026, final Clarification from Doctor Dobie Notified in October 19th email. (EXhibit U)

V/r,

Dobie Morales Luna |도비 모랄러스 루나
Human Resources Benefits Specialist II | Medical Leave Team
Hyundai Motor Group Metaplant America, LLC
1500 Genesis Drive, Ellabell, Georgia 31308
Phone: 912-724-8531 | www.hmgma.com

HMG Metaplant America

Global Leader in Manufacturing Innovation

This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain personal information, confidential information and/or legally privileged information. Any personal information, confidential information and/or legally privileged information shall only be accessed by authorized personnel of Hyundai Motor Group Metaplant America, LLC ("HMGMA") and its approved suppliers and may be used only as permitted by HMGMA and its policies. Contractual restrictions apply to third parties. If you are not the intended recipient, you are hereby notified you have either received this message in error or through interception, and that any review, use, distribution, copying or disclosure of this message or its attachments is strictly prohibited and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of HMGMA. If you received this message in error, please contact the sender by reply e-mail and destroy all copies of the original message.

본 이메일(첨부 파일 포함)은 지정된 수신자만을 위한 것이며, 개인 정보, 기밀 정보 및/또는 법적으로 보호받는 정보를 포함하고 있을 수 있습니다. 모든 개인 정보, 기밀 정보 및 법적으로 보호 받는 정보는 Hyundai Motor Group Metaplant America, LLC (이하 "HMGMA")의 권한을 부여받은 직원 및 승인된 협력사만이 접근할 수 있으며, HMGMA와 그 정책이 허용하는 범위 내에서만 사용되어야 합니다. 제3자에게는 계약상의 제한 사항이 적용될 수 있습니다.

귀하가 본 이메일의 지정된 수신자가 아닐 경우, 본 메시지가 오류 또는 부당한 방식을 통해 전달되었음을 알려드립니다. 본 메시지나 첨부 파일을 검토, 사용, 배포, 복사 또는 공개하는 행위는 엄격히 금지되며, 형사 처벌 및 민사상의 책임을 질 수 있습니다. 모든 개인적인 메시지는 발신자 개인의 견해일 뿐 HMGMA의 견해를 대변하지 않습니다. 본 메시지를 잘못 수신하신 경우, 회신 이메일을 통해 발신자에게 연락해 주시고 원본